THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHAD A. JUNIOR, Defendant-Appellant.

Fourth District    No. 4—02—0334

Argued May 12, 2004.—Opinion filed June 25, 2004.

Michael J. Pelletier and Andrew J. Harger (argued), both of State Appellate Defender's Office, of Chicago, for appellant.

Scott Rueter, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and Anastacia R. Brooks (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

On March 10, 2001, the State charged defendant, Chad A. Junior, and codefendant, Aaron Settle, by information with two counts of burglary (720 ILCS 5/19—1(a) (West 2000)) and one count of residential burglary (720 ILCS 5/19—3 (West 2000)). Settle pleaded guilty to all charges. Defendant pleaded not guilty, and a jury trial was held in December 2001. The jury found defendant guilty of two counts of burglary. The jury could not reach a unanimous verdict on the residential burglary count, and the trial court declared a mistrial. Defendant filed a motion for a new trial, which the court rejected. On

February 21, 2002, Judge Lisa Holder White sentenced defendant as a Class X offender to concurrent 10-year prison sentences on the burglary convictions. On the State's motion, the court also dismissed the residential burglary charge. Defendant petitioned the court to reconsider his sentence. The court denied the motion and held his sentence was appropriate.

Defendant appeals, arguing (1) his due-process rights were violated when the State used and failed to correct Settle's perjured testimony, (2) he was denied effective assistance of counsel because Public Defender Jon Baxter represented both him and Settle at their joint preliminary hearing, and (3) his trial counsel, Assistant Public Defender David Massey, labored under a conflict of interest because his law partner, Baxter, represented both Junior and Settle at their joint preliminary hearing. We reverse and remand for a new trial.

At approximately 1 a.m. on March 5, 2001, Skyler Kaufman, Sebastian Santos, and Daniel French were sitting on Kaufman's front porch waiting to catch some of their friends who were supposed to "prank" French's house down the street. The boys noticed a white vehicle they initially thought belonged to their friends driving slowly in the neighborhood. They hid but continued to watch as the vehicle drove around the neighborhood and parked.

The boys saw two men get out of the vehicle. At trial, they testified one man was wearing a red-hooded sweatshirt and the other had a long ponytail. At trial, none of the boys could identify defendant as one of the men who got out of the vehicle.

The boys watched the men break into a black Jeep that belonged to a neighbor and try to break into garages in the neighborhood. The boys awakened Kaufman's father, Tom Kaufman, who called the police and then went outside to wait with the boys. Before the police arrived, Tom saw the two men walking down the street. One man was carrying what looked like a bag, and the other was pushing an object. When the two men noticed Tom, they dropped what they were carrying and ran in between some houses.

Tom and the boys remained outside until the police arrived. The boys told Officer Steve Young what they had witnessed and took him to the white car. As they were talking, Settle approached the white car. Kaufman and Santos identified Settle as one of the men they saw break into the Jeep. Officer Young approached Settle, who initially said his wife had car trouble and he was looking for her car. Settle then admitted he and defendant had been burglarizing vehicles and garages in the area.

Officers recovered and returned a coat, compact discs, and a camera taken from Christian Sassano's Jeep, a power washer and

chain saw taken from William Shorter's detached garage, and a plastic gas can taken from Kathy Powell's attached garage.

Both defendant and Settle were charged with the counts outlined above. At their arraignment, Settle told the trial court, "[t]his man was with me earlier this day. At the time of the offense, it was a different person that was with me." At their joint preliminary hearing, defendant and Settle were represented by Baxter. After the State had presented its evidence, the following exchange took place between Settle and the court:

"SETTLE: I want to make a statement. This my co[ ]defendant. He wasn't even there.

COURT: Sir, you have asked to have a lawyer appointed and we have done that. You must speak through your lawyer. If you want to represent yourself, we will take away your lawyer. Can't have it both ways. Do you want a lawyer in the case?

SETTLE: Yes."

The trial court found probable cause to believe defendant and Settle committed the burglaries. Both men pleaded not guilty. The court appointed Massey to represent defendant and Assistant Public Defender Thomas Wheeler to represent Settle.

On July 25, 2001, Settle and the State's Attorney's office entered into a plea agreement. In exchange for Settle's guilty pleas on all three counts and his testimony against defendant, the State promised to seek concurrent, not consecutive, sentences.

On December 10, 2001, defendant's trial began. Settle testified defendant was with him on the morning of March 5, 2001, and together they burglarized the Jeep and two garages. He testified defendant owed him money and they went out that night to get that money. Settle recanted earlier statements, including a written statement, where he indicated defendant was not involved in the burglaries. He testified he made the statements because he had been threatened by his brother and defendant.

When questioned on direct, Settle testified he had not been promised anything in consideration for his testimony. During cross-examination, when defense counsel challenged this assertion, Settle claimed he was testifying only because he was subpoenaed. During closing arguments, the prosecutor argued if Settle and the State's Attorney's office had made a deal, the deal was not a very good one for Settle as he anticipated being sentenced to the penitentiary.

Tina Hutchinson testified for the defense. She testified defendant lived with her at the time of the burglary. On March 4, 2001, Settle was at her home until 10 p.m., but he left alone. Defendant went to bed shortly after Settle left. Hutchinson went to sleep in the same bed as defendant at about midnight.

The jury found defendant guilty of two counts of burglary but could not reach a unanimous verdict on the residential burglary charge. The State later moved to dismiss the residential burglary charge. Defendant was sentenced to two concurrent 10-year prison sentences. This appeal followed.

■ The State's knowing use of perjured testimony to obtain a criminal conviction violates a defendant's due-process rights. *People v. Olinger*, 176 Ill. 2d 326, 345, 680 N.E.2d 321, 331 (1997). Where a reasonable likelihood exists that the perjured testimony could have affected the jury's verdict, the conviction must be set aside. *Olinger*, 176 Ill. 2d at 345, 680 N.E.2d at 331. The same principles apply where the State does not solicit the testimony but allows it to go uncorrected, even if the testimony concerns only the credibility of the witness. *Olinger*, 176 Ill. 2d at 345, 680 N.E.2d at 331.

■ Fundamental fairness requires that a jury be truthfully informed about all matters going to the credibility of a witness and his motives for testifying known by the prosecutor or an agent of the prosecutor. See *People v. Jimerson*, 166 Ill. 2d 211, 223, 652 N.E.2d 278, 284 (1995). The " 'jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend.' " *Olinger*, 176 Ill. 2d at 345, 680 N.E.2d at 331, quoting *Napue v. Illinois*, 360 U.S. 264, 269, 3 L. Ed. 2d 1217, 1221, 79 S. Ct. 1173, 1177 (1959).

■ In this case, defendant claims the State elicited testimony from Settle that he received no promises from the State in return for his testimony when the State actually promised to seek concurrent, not consecutive, sentences. On July 25, 2001, before Settle pleaded guilty to the three charges arising out of this incident, the prosecutor, Assistant State's Attorney Richard Current, explained the plea agreement to the trial court judge, Theodore Paine, as follows:

> "Basically, the defendant is going to plead to the charges. The matter will be set for [s]entencing [h]earing. He is also willing to agree to cooperate being a [witness] in the case against the co[ ]defendant[,] which I believe is set for tomorrow. The People have agreed that any sentencing would be served concurrently and there would be no consecutive sentences."

Defendant asserts, despite this knowledge, the State here allowed Settle's false testimony to go uncorrected and actually misled the jury during closing argument, violating his due-process rights.

Defendant's claims are supported by the record. At trial, Settle testified he was promised nothing in return for his testimony:

"[PROSECUTOR DAVID SPENCE]: [Settle], you have pled guilty to the burglary of the Jeep, to the burglary of the garage, and to residential burglary; haven't you?

SETTLE: Yes.

PROSECUTOR: You are currently awaiting sentencing in those matters, is that correct?

SETTLE: Yes.

PROSECUTOR: At the time of your plea, was there any promises made to you regarding an exchange for your testimony here?

SETTLE: No."

During cross-examination, the following exchange occurred:

"DEFENSE COUNSEL: And you think that by coming in here and telling these stories, it's going to help you somehow?

SETTLE: No.

DEFENSE COUNSEL: You don't think it's going to help you?

SETTLE: No. I just had a subpoena. If I didn't come today, I had to go to jail for not obeying the subpoena."

The State's redirect included the following:

"[PROSECUTOR SPENCE]: Yes. Thank you. Sir, I think you indicated that you think you know what to expect with regard to the criminal cases that you're involved in. Do you recall making that statement earlier?

SETTLE: Yes.

PROSECUTOR: What is it that you expect?

SETTLE: Well for the residential, it's mandatory 4 to 7 years [in the Department of Corrections].

PROSECUTOR: So, you're expecting to go to the Department of Corrections?

SETTLE: Yes."

Throughout his testimony, Settle's testimony suggested he was testifying because he was subpoenaed, not because it was a condition of his plea agreement. Further, he stated he was promised nothing for his testimony when in fact the State made a sentencing concession promising it would not seek consecutive sentences. During closing arguments, the prosecutor implied Settle received no consideration for his testimony:

"Is there anything here that suggests to you that Mr. Settle had a reason to tell the police that it was [defendant] when it was not[?] This is his long[-]time friend. The guy that he spent nearly the entire day with by all of the evidence in this case. He also told you that he plead [sic] guilty to all of these offenses, and he also told you that he has an expectation of what the outcome is going to be for him as a result of these burglaries; and his expectation was that he's going to prison.

Now if he is identifying someone in exchange for helping the prosecution, he didn't get a very good deal; did he[?] There's no commitment as to the sentence that he's going to receive. His expectation is he's going to the penitentiary. So[,] did he tell you that [defendant] did this, [*sic*] because he's not going to have to go the penitentiary[?] Of course not. Nobody had told him anything."

Knowledge on the part of any representative or agent of the prosecution that a witness's testimony is not truthful is sufficient to create an obligation to correct false testimony. *Olinger*, 176 Ill. 2d at 348, 680 N.E.2d at 332. Here, Settle made an agreement with the State's Attorney's office in July 2001, months before he testified in defendant's December 2001 trial. When explaining to Judge Paine the conditions of Settle's plea, Assistant State's Attorney Current stated, "[h]e is also willing to cooperate being a [witness] in the case against the co[ ]defendant[,] which I believe is set for tomorrow. The People have agreed that any sentencing would be served concurrently and there would be no consecutive sentences." Settle's original sentencing hearing was set for September 14, 2001, but was continued five times, by both the State and Settle, until after defendant was tried and sentenced. Defendant's prosecutor herein, David Spence, represented the State at one of Settle's continuance hearings, the one held December 10, 2001.

The State disagrees with defendant's contention that the prosecution misled the jury about the inducement for Settle's testimony. It further maintains any error was harmless beyond a reasonable doubt and did not contribute to the jury's verdict. According to the State, even though Settle denied receiving any promises from the prosecution, the jury was still aware of Settle's self-serving motive to cooperate while awaiting sentencing in his case in the expectation of leniency.

In considering the particular facts and circumstances of this case, we conclude that evidence of Settle's deal with the prosecution could have affected the jury's verdict. The State's case against defendant depended almost entirely on Settle's testimony as it was the only evidence linking defendant to the burglaries. None of the other eyewitnesses could identify defendant as the man they saw burglarizing the black Jeep. Maintaining Settle's credibility was therefore crucial to the State's case against defendant. Truthful evidence about the conditions of his plea agreement could show Settle had a motive to testify falsely. Had the jury been informed of such information, it could reasonably have concluded that Settle's testimony was not credible.

The fact that the jury was aware Settle was awaiting sentencing for his involvement in the crimes does not alter our conclusion. Throughout its case, the State characterized Settle as a witness who

had "no reason to lie" because he was already going to prison. Settle told the jury he was testifying because he was subpoenaed and he had received "no promises" from the State in exchange for his testimony. Settle and the State's Attorney's office made an agreement, the conditions of which were known to Judge Paine. After Settle testified to the jury about the conditions of his plea, the State was required to correct the false information. *Olinger*, 176 Ill. 2d at 347, 680 N.E.2d at 332. The State did not do this. We reverse and remand for a new trial on the merits; although not binding on retrial, we find the evidence here sufficient to prove defendant guilty beyond a reasonable doubt, so double jeopardy does not bar retrial.

Because we have remanded this case for a new trial, we need not address defendant's remaining claims of ineffective assistance of counsel.

For the reasons stated, we reverse the trial court's judgment and remand for a new trial.

Reversed and remanded.

TURNER and MYERSCOUGH, JJ., concur.