THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LYNDELL GRAHAM, Defendant-Appellant.

First District (1st Division)   No. 1—08—0444

Opinion filed July 20, 2009.

Michael J. Pelletier, Patricia Unsinn, and Michael J. Wilson, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita Alvarez, State's Attorney, of Chicago (James E. Fitzgerald, Kathleen Warnick, Mary Needham, and Amanda Warmington, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HALL delivered the opinion of the court:

The defendant, Lyndell Graham, was charged by indictment with possession of a controlled substance with intent to deliver within 1,000 feet of a public park (720 ILCS 570/401(c)(2), 407(b)(1) (West 2006)). Following a jury trial, the defendant was found guilty and sentenced to 10 years' imprisonment in the Department of Corrections. In addition, the defendant was assessed $1,735 in monetary penalties. The defendant appeals, raising the following issues: (1) whether the trial judge violated Illinois Supreme Court Rule 431(b) (eff. May 1, 2007), and if so, whether the error requires that he receive a new trial; (2) whether the trial court erred in failing to award the defendant his statutory credit of $5 per day toward the monetary penalties assessed; and (3) whether the mittimus must be corrected. As the defendant has not raised a challenge to the sufficiency of the evidence, a brief summary of the trial evidence will suffice.

On the morning of September 28, 2006, Chicago police officer Peter Medina and his partner were driving an unmarked police vehicle in the vicinity of 15th Street and Kostner Avenue, when Officer Medina observed the defendant loitering in an alley and looking around nervously. After establishing a surveillance post from where he could observe the defendant, Officer Medina observed two transactions in which a man would approach the defendant and hand him money. After placing the money in his pocket, the defendant would walk to a nearby garbage can, bend down and retrieve a small object from the rear of the can. The defendant then gave the object to the man who had given him the money. After observing the second transaction, Officer Medina suspected that the defendant was selling narcotics and radioed other officers, instructing them to approach the defendant. After substances suspected of being crack cocaine were discovered behind the garbage can, the defendant was placed under arrest. A search of the defendant revealed $73 in his right pocket. The defendant made an inculpatory statement to the officers to the effect of " 'I am

not going down for these rocks,' " and that he had younger persons who could sell the crack cocaine for him.

According to the trial testimony, the substances recovered by the police tested positive for cocaine. The trial testimony also established that the distance from where the defendant was arrested to Franklin Park was 269 feet.

In his defense, the defendant presented the testimony of Alice Franklin. Ms. Franklin testified that the defendant was her boyfriend. In the late morning of September 28, 2006, the defendant and she walked to a store located at 15th Street and Kostner Avenue. They were returning to their residence when a police car came up and stopped in front of them, blocking their way into an alley. For about 10 minutes, the defendant and she discussed why the police had stopped there. When the defendant's uncle drove up in a van, Ms. Franklin walked on to their residence. The defendant and his uncle drove past her. She never saw the defendant sell drugs that morning, and she did not see him talking to anyone other than his uncle. Ms. Franklin had given the defendant $73 to pay the gas bill.

Following deliberations, the jury found the defendant guilty of possession of a controlled substance with intent to deliver within 1,000 feet of a public park. The trial judge imposed a 10-year sentence. The trial court also imposed certain monetary penalties, among them a $1,000 controlled substance assessment (720 ILCS 570/411.2(i) (West 2006)), a $10 mental health court assessment (55 ILCS 5/5—1101(d—5) (West 2006)) and a $5 youth diversion/peer group assessment (55 ILCS 5/5—1101(e) (West 2006)). According to the mittimus, the defendant was convicted of "MFG/DEL COCAINE/SCH/PUB HS/PK."

This appeal followed.

## ANALYSIS

### I. Compliance with Supreme Court Rule 431(b)

The defendant contends that the trial judge violated Rule 431(b) when she failed to ask the potential jurors whether they accepted the principles set forth in *People v. Zehr*, 103 Ill. 2d 472, 469 N.E.2d 1062 (1984). He further contends that the error requires that he receive a new trial.

### A. *Standard of Review*

Where an issue concerns compliance with a supreme court rule, the court reviews the issue *de novo*. *People v. Garner*, 347 Ill. App. 3d 578, 583, 808 N.E.2d 10 (2004).

### B. *Waiver*

The defendant failed to object at trial to the error he now claims and failed to raise the claim of error specifically in his motion for a

new trial. Therefore, the alleged error has not been preserved for our review. *People v. Nolan*, 332 Ill. App. 3d 215, 228, 773 N.E.2d 105 (2002). The defendant maintains that we should review his claim pursuant to the plain error doctrine (134 Ill. 2d R. 615(a)). The first step in the plain error analysis is to determine if error occurred. *People v. Walker*, 232 Ill. 2d 113, 124-25, 902 N.E.2d 691 (2009).

## C. *Discussion*

The trial judge commenced *voir dire* by addressing the entire venire. Pertinent to the defendant's claim of error, the trial judge told the venire:

"In fact, under our law, a defendant is presumed to be innocent of all of the charges against him. The presumption of innocence remains with him during the entire stage of the trial and even during the deliberations on a verdict, and it must be kept in your mind at all times during the presentation of the evidence in the case.

The presumption of innocence in a criminal case is not overcome unless, based on all of the evidence in the case, you are convinced beyond a reasonable doubt, that's the standard, beyond a reasonable doubt that the defendant is guilty.

The defendant is never required to prove his innocence, and the defendant is never required to testify or to call any witnesses at all on their own behalf. That's because it's always the State that has the burden of proving an individual guilty."

The trial judge then questioned the first panel of potential jurors as follows:

"First of all, does everybody understand that the defendant in this case as well as every criminal case across the country is presumed innocent, and that means the defendant does not have to present any evidence on their own behalf. Raise your hand if you don't understand that. I'm assuming everybody is going to at least understand it.

Now, a slightly different question. Even though you all understand it, is there anybody that has a problem with it?

Okay. Indicating for the record nobody is raising their hand.

Now, when I say the defendant doesn't have to present any evidence, what that means is part and parcel of that is the defendant does not have to testify on his own behalf. He doesn't have to call any witnesses, but most importantly he doesn't have to testify himself. Does everybody understand that?

Okay. Nobody is raising their hand to indicate they don't.

Now, even though you all understand that, is there anybody out here who has a problem with that, that is one of the principles of our system of law?

Okay. Indicating for the record that nobody is raising their hand."

The trial judge then commenced questioning the potential jurors individually. The questions pertained generally to the jurors' backgrounds, interests and prior experience with the court system. The prosecutor and defense counsel then asked follow-up questions of the potential jurors pertinent to the facts of the case. Eleven jurors were selected from the first panel.

The trial judge addressed the second panel as follows:

"Everybody here understand the general principle that the State always has the burden of proof and the defendant doesn't have to call any witnesses at all. Most importantly, what that means is he doesn't have to testify himself. Do the six of you understand that?

Everyone is shaking their head yes. Nobody is raising their hand, if you don't.

Okay. Anybody out of the six of you, even though you understand it, anybody have a problem with that?

In other words, anybody take it out on the defendant if he chooses to exercise his right not to testify and not to present any witnesses? Raise your hand if you would take it out on them.

Okay. Nobody is raising their hand."

The trial judge then questioned the potential jurors individually about their backgrounds, interests and previous experiences with the court system. Again, the prosecutor and defense asked follow-up questions pertinent to the case. The twelfth juror and two alternates were selected from the second panel.

### 1. Did the *Voir Dire* Procedure Comply With Rule 431(b)?

In *Zehr*, our supreme court held that it was essential for jurors in a criminal case to know that the defendant was presumed innocent, that he was not required to produce any evidence on his own, that he must be proved guilty beyond a reasonable doubt and that his failure to testify on his own behalf could not be held against him. *Zehr*, 103 Ill. 2d at 477. In response to *Zehr*, in 1997, Rule 431 was amended to provide that, if requested by the defendant, the trial court was required to ask the jurors, individually or in a group, whether they accepted the principles set forth in *Zehr*. See 177 Ill. 2d R. 431(b). Because questioning the jurors with respect to the *Zehr* principles was contingent on a request by the defendant, cases construing the 1997 amendment found no duty on the part of the trial judge to *sua sponte* question the jurors as to the *Zehr* principles. See *People v. Gilbert*, 379 Ill. App. 3d 106, 109, 882 N.E.2d 1140 (2008); *People v. Williams*, 368 Ill. App. 3d 616, 623, 858 N.E.2d 606 (2006); *People v. Foreman*, 361 Ill. App. 3d 136, 836 N.E.2d 750 (2005).

In 2007, Rule 431(b) was amended and now provides as follows:

"The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Ill. S. Ct. R. 431(b) (eff. May 1, 2007).

The defendant's trial took place after the effective date of the 2007 amendments. Therefore, the 2007 amended version of Rule 431(b) governs this case.

By eliminating the language requiring the defendant to request that the jurors be questioned as to the *Zehr* principles, the rule now places an affirmative *sua sponte* duty on the trial courts to ask potential jurors in each and every case whether they understand and accept the *Zehr* principles. *People v. Anderson*, 389 Ill. App. 3d 1, 8, 904 N.E.2d 1113 (2009). The rule provides that the court must provide each juror with " 'an opportunity to respond to' the specific *Zehr* principles." *Anderson*, 389 Ill. App. 3d at 8, quoting Ill. S. Ct. R. 431(b) (eff. May 1, 2007). As this court stated in *Anderson*, "[w]e find Rule 431(b) was amended to send a clear message to trial and appellate courts: it is the courts' responsibility to enforce the rules as written. Compliance with Rule 431(b) is a judicial duty." *Anderson*, 389 Ill. App. 3d at 8.

In questioning the first panel of potential jurors, the trial judge addressed three out of the four *Zehr* principles, namely, the presumption of innocence, that the defendant's failure to testify could not be held against him and that the defendant was not required to present any evidence on his own behalf. She also provided the jurors with an opportunity to respond to those questions. However, the trial judge failed to question and allow the jurors to respond to whether they understood and accepted that the State had the burden to prove the defendant guilty beyond a reasonable doubt.

In questioning the second panel, the trial judge's questioning of the potential jurors was also incomplete. The trial judge appears to have assumed that the potential jurors understood already that the

State had the burden of proof, and she failed to mention reasonable doubt. Without pausing to allow the potential jurors to respond that they understood and accepted that the State had the burden of proof, the trial judge immediately moved to the next *Zehr* principle. The trial judge also failed to question and give the potential jurors an opportunity to respond to whether they understood and accepted the principle that the defendant was presumed innocent.

The State responds that the trial judge has broad discretion in conducting the questioning of potential jurors so as to satisfy the requirements of Rule 431(b). The State maintains that the trial judge satisfied the rule, albeit with the assistance of the prosecutor and defense counsel.

The State points to the trial judge's reference to the *Zehr* principles in her remarks to the venire prior to the seating of the first panel. The State further points out that, prior to opening statements, the trial judge again admonished the jury that the defendant had no obligation to call witnesses, the defendant did not have to testify and that the State had the burden of proof. These were "admonitions" to the potential jurors, not questions with an opportunity to respond as required by Rule 431(b). See *People v. Starks*, 169 Ill. App. 3d 588, 596, 523 N.E.2d 983 (1988) ("*Zehr* teaches that admonitions and instructions are no substitute for interrogation").

The State then points out that the trial judge asked the first potential juror whether she understood the difference between the burden of proof in a civil case and in a criminal case; she indicated she understood. However, the trial judge never referenced that the State had the burden of proof or whether the potential juror would hold the State to its burden. The trial judge did question the second potential juror as to whether he would hold the State to its burden of proof in this case. The State notes that the trial judge directed the other potential jurors' attention to the questions she was asking. However, there was no opportunity for the other potential jurors to respond that they understood or accepted that the State had the burden of proof beyond a reasonable doubt.

The State then argues that the prosecutor's and defense counsel's questions satisfied the remainder of the trial judge's duty under Rule 431(b). The State points out that the prosecutor asked both panels whether they had any personal feelings or religious doubts that would prevent them from signing a guilty verdict if the State was able to prove the case beyond a reasonable doubt or, if the State did not prove its case, would their feelings or doubts prevent them from signing a not guilty verdict. As to the first panel, the record indicates a "no" response to both questions. However, there is no indication as to

whether one prospective juror responded or whether it was a collective "no" to both questions. As to the second panel, the record fails to indicate any response to the questions.

Finally, the State points out that in his opening statement, defense counsel reminded the jury that the defendant had the presumption of innocence. Again, an opening statement does not provide an opportunity for the jurors to respond to the *Zehr* principles as required by Rule 431(b).

In any event, the State may not rely on the prosecutor's or defense counsel's questions to satisfy the requirements of Rule 431(b). Rule 431(b) places the duty on the trial judge, not on the prosecutor or defense counsel, to pose the specific questions set forth in the rule to insure that the prospective jurors understand and accept the *Zehr* principles. See *People v. Stump*, 385 Ill. App. 3d 515, 522, 896 N.E.2d 904 (2008); see also *Anderson*, 389 Ill. App. 3d at 10 (Garcia, J., specially concurring) ("The amended rule now places the legal obligation that fair and unbiased jurors are selected directly upon the shoulders of the trial judge"). The trial judge's failure to fully comply with that mandate constitutes error. *Stump*, 385 Ill. App. 3d at 522.

By failing to ascertain whether all of the potential jurors understood and accepted all the *Zehr* principles, the trial judge failed to comply fully with Rule 431(b). Therefore, the defendant has established that error occurred.

## 2. Does the Error Require a New Trial?

We must now determine if the error in this case requires that the defendant receive a new trial. *Anderson* teaches that it does.

In *Anderson*, the defendant failed to preserve the compliance with Rule 431(b) error for review. This court chose to address the defendant's claim under the plain error exception to forfeiture allowing for review "where the error is so serious that the defendant was denied a substantial right, and thus a fair trial." *People v. Herron*, 215 Ill. 2d 167, 179, 830 N.E.2d 467 (2005).

In *Stump*, the Fourth District Appellate Court applied a harmless error analysis to the trial court's failure to comply with Rule 431(b). In light of the fact that all four *Zehr* principles were addressed to each juror at some time during the *voir dire* and the overwhelming evidence of the defendant's guilt, the court concluded that the failure to comply with Rule 431(b) could not have affected the jury's verdict. *Stump*, 385 Ill. App. 3d at 522.

In *Anderson*, we declined to follow the decision in *Stump* that a harmless error analysis applied to a trial judge's failure to comply with Rule 431(b). Unlike *Stump*, neither defense counsel nor the court

addressed each juror with all four *Zehr* principles. Moreover, this court noted that the court in *Stump* chose to apply a harmless error analysis, despite acknowledging the "mandatory nature of the rule" signifying presumptive prejudicial error. *Anderson*, 389 Ill. App. 3d at 9. We concluded that the trial judge's failure to fully comply with her duty under Rule 431(b) was so serious an error as to deny the defendant a substantial right and thus a fair trial. *Anderson*, 389 Ill. App. 3d at 9.

Subsequent to our decision in *Anderson*, our supreme court issued its opinion in *People v. Glasper*, 234 Ill. 2d 173, 917 N.E. 2d 401 (2009). At issue in *Glasper* was whether the trial judge's denial of defense counsel's request to question jurors as to the *Zehr* principles, in violation of the prior version of Rule 431(b), was subject to a harmless error analysis. The court determined that a harmless error analysis applied to the violation because "the error in this case does not involve a fundamental right, or even a constitutional protection. The error involves a right made available only by rule of this court. Significantly, the right in question, at the time of the instant trial, was not afforded to all defendants—only those defendants who chose to exercise it." *Glasper*, 234 Ill. 2d at 193. The court reiterated, however, that a trial before a biased jury would constitute a structural error not subject to harmless error review. *Glasper*, 234 Ill. 2d at 200-01, citing *People v. Rivera*, 227 Ill. 2d 1, 879 N.E.2d 876 (2007).

The decision in *Glasper* does not alter the result in this case. The court emphasized that "this holding is limited to the version of Rule 431(b)(4) that was in effect at the time of the instant trial, and would not necessarily apply to subsequent versions of the rule." *Glasper*, 234 Ill. 2d at 200. Unlike the version of Rule 431(b) at issue in *Glasper*, under the version of the rule at issue in the present case, the rule's protections are now extended to all defendants, not just those who chose to invoke them. As Justice Garcia succinctly noted in *Anderson*:

> "When a judge fails to comply with her obligations set out in amended Rule 431(b) to ensure the right of a defendant to a trial before fair and impartial jurors, our judicial system falls short and, I submit, the integrity of the judicial process is impacted." *Anderson*, 389 Ill. App. 3d at 11 (Garcia, J., specially concurring).

Our supreme court has yet to construe the 2007 version of Rule 431(b) at issue in this case. Until that time, we shall continue to follow *Anderson* and find that a trial judge's failure to comply with Rule 431(b) denies a defendant a substantial right and thus a fair trial and obviates the need to inquire into the harmfulness or the measure of prejudice to the defendant. *Anderson*, 389 Ill. App. 3d at 9.

## II. Remaining Issues Raised on Appeal

Deciding this case as we do, we need not address the sentencing or correction of the mittimus issues raised by the defendant.

## III. Double Jeopardy

As noted earlier, the defendant has not raised a challenge to the sufficiency of the evidence. From our review of the record, we are satisfied that the evidence was sufficient to prove the defendant guilty beyond a reasonable doubt. Therefore, double jeopardy does not bar a retrial. See *People v. Junior*, 349 Ill. App. 3d 286, 293, 811 N.E.2d 1267 (2004).

## CONCLUSION

The defendant's conviction and sentence are reversed, and the cause is remanded for a new trial.

Reversed and remanded.

R.E. GORDON, P.J., and WOLFSON, J., concur.