NO. 4-08-0841     Opinion Filed 4/11/11

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| GREGORY J. CHESTER, | ) | Nos. 07CF1069 |
| Defendant-Appellant. | ) | 07CF797 |
| | ) | |
| | ) | Honorable |
| | ) | Robert L. Freitag, |
| | ) | Judge Presiding. |

_____

JUSTICE POPE delivered the judgment of the court, with opinion.

Justices Appleton and McCullough concurred in the judgment and opinion.

**OPINION**

In October 2007, defendant, Gregory J. Chester, was indicted on three counts of aggravated battery (720 ILCS 5/12-4(a), (b)(6) (West 2006)) and one count of resisting a peace officer (720 ILCS 5/31-1(a-7) (West 2006)).  Following a jury trial, defendant was convicted and sentenced to 12 years' imprisonment for aggravated battery (McLean County case No. 07-CF-1069) with the sentence to run consecutive to defendant's sentences in McLean County case No. 07-CF-797 of 5 years' imprisonment for obstructing justice and 364 days in jail for resisting arrest.

Defendant appealed only issues raised in his aggravated-battery case (McLean County case No. 07-CF-1069), arguing the following: (1) the trial court violated Illinois Supreme Court Rule 431(b) (eff. May 1, 2007); (2) the State improperly commented during closing argument on defendant's

exercise of his right to refrain from testifying and presenting evidence; and (3) the trial court abused its discretion in sentencing defendant to 12 years' imprisonment. In January 2010, this court affirmed. *People v. Chester*, 396 Ill. App. 3d 1067, 926 N.E.2d 723 (2010).

The Supreme Court of Illinois denied defendant's petition for leave to appeal but issued a supervisory order (*People v. Chester*, 239 Ill. 2d 561 (2011) (nonprecedential supervisory order on denial of petition for leave to appeal)) directing this court to vacate our judgment and to reconsider in light of *People v. Thompson*, 238 Ill. 2d 598, 939 N.E.2d 403 (2010). In accordance with the supreme court's directions, we vacate our prior judgment and reconsider in light of *Thompson* to determine whether a different result is warranted. Because *Thompson* does not change the result in this case, we again affirm.

## I. BACKGROUND

On October 6, 2007, Bloomington police officer Andrew Chambers was in complete police uniform patrolling in a marked police car when he passed a purple Cadillac driven by defendant, who Officer Chambers knew did not have a valid driver's license. After Officer Chambers activated his car's lights and siren, the Cadillac pulled into the driveway of an apartment complex. Defendant exited the vehicle and looked back at Officer Chambers, then proceeded to take off running. Officer Chambers got out of his vehicle and, standing approximately 20 feet from defendant,

yelled at defendant to stop. Defendant proceeded into the common area of the apartment building through a steel door. As Officer Chambers followed, defendant slammed the door into the officer. Officer Chambers shielded his face with his left arm. He immediately felt extreme pain, and his fingers went numb when the door slammed on his arm.

Once inside the building, Officer Chambers attempted to deploy his Taser, but the probe fell off in the hallway. As he proceeded up the stairs, defendant yelled, "[B]aby, police are chasing me. Open the door." Officer Chambers followed defendant up the stairs and saw defendant banging on the door of apartment C, saying "let me in, let me in." A female inside the apartment opened the door for defendant, who entered the apartment and slammed the door on Officer Chambers' right arm. Officer Chambers braced himself and pushed the door back on defendant, knocking him to the ground. Defendant continued to resist arrest as Officer Chambers attempted to subdue him with pressure-point tactics. Defendant ripped the officer's uniform and ripped off his credentials and badge. Officer Chambers was eventually able to conduct a "drive stun" on defendant, holding the gun directly against defendant's body. The drive stun was not successful, and defendant continued hitting Officer Chambers and became more aggressive in his resistance. The officer issued a second drive stun for approximately five seconds. Defendant dropped his arms to his side and said, "I quit."

X rays of Officer Chambers's left arm revealed frac-

tures in the ulna and radius, both of the bones in the forearm. Because of the injuries he sustained, he was in physical therapy for 1 1/2 months and missed approximately 3 months of work.

After presenting its case, the State dropped one count of aggravated battery (720 ILCS 5/12-4(b)(6) (West 2006)) as improperly charged. The jury convicted defendant of the remaining two aggravated-battery charges and resisting a peace officer. After the trial court found the resisting charge and one of the aggravated-battery charges merged with the remaining count of aggravated battery, the court sentenced defendant as stated.

We affirmed, and the supreme court denied defendant's petition for leave to appeal but directed this court to vacate our judgment and to reconsider in light of *Thompson*.

## II. ANALYSIS

On appeal, defendant argues (1) the trial court violated Supreme Court Rule 431(b); (2) the State improperly commented during closing argument on defendant's exercise of his right to refrain from testifying and presenting evidence; and (3) the trial court abused its discretion in sentencing defendant to 12 years' imprisonment.

## A. *Voir Dire*

Defendant argues the trial court violated Illinois Supreme Court Rule 431(b) (eff. May 1, 2007) when it failed to question jurors on the third and fourth Rule 431(b) principles, which provide defendant is not required to present evidence on his own behalf and defendant's choice not to testify may not be

held against him.  Defendant concedes he failed to preserve this issue for review but maintains the issue may be addressed by this court as it constitutes plain error.

The plain-error doctrine allows a reviewing court to consider an unpreserved and otherwise forfeited error when "(1) the evidence is close, regardless of the seriousness of the error[;] or (2) the error is serious, regardless of the closeness of the evidence." *People v. Herron*, 215 Ill. 2d 167, 186-87, 830 N.E.2d 467, 479 (2005).  A harmless-error analysis applies when the defendant timely objected to the error.  *People v. Johnson*, 388 Ill. App. 3d 199, 203, 902 N.E.2d 1265, 1268 (2009).  Because defendant failed to object at trial, we analyze any error under the plain-error doctrine.  However, before we consider the plain-error doctrine, we must determine whether the trial court committed an error.  We review the trial court's compliance with a supreme court rule *de novo*.  *People v. Suarez*, 224 Ill. 2d 37, 41-42, 862 N.E.2d 977, 979 (2007).

In *People v. Zehr*, 103 Ill. 2d 472, 477, 469 N.E.2d 1062, 1064 (1984), our supreme court held essential to the qualification of a jury in a criminal case is each juror's knowledge of the following four principles: (1) a defendant is presumed innocent, (2) he is not required to present evidence on his own behalf, (3) the State must prove him guilty beyond a reasonable doubt, and (4) his decision not to testify may not be held against him.  The subject matter of these principles should be addressed in the course of *voir dire* as a juror's prejudice as

- 5 -

to any of them would not be automatically cured with closing remarks by counsel or jury instructions from the trial court. *Zehr*, 103 Ill. 2d at 477, 469 N.E.2d at 1064.

In 1997, our supreme court adopted Rule 431(b) to embrace the *voir dire* principles established in *Zehr*.  Ill. S. Ct. R. 431(b) (eff. May 1, 1997).  The original rule provided, "[i]f requested by the defendant, the court *shall* ask each potential juror, individually or in a group, whether that juror understands and accepts" the four *Zehr* principles.  (Emphasis added.)  Ill. S. Ct. R. 431(b) (eff. May 1, 1997).  At that time, the trial court had no obligation to *sua sponte* question jurors as to the *Zehr* principles.  *People v. Graham*, 393 Ill. App. 3d 268, 272, 913 N.E.2d 99, 103 (2009).

However, effective May 1, 2007, the supreme court amended the language to require trial courts to question jurors on the Rule 431(b) principles without a defendant's prompting, providing:

> "The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer

any evidence on his or her behalf; and (4)
that the defendant's failure to testify can-
not be held against him or her; however, no
inquiry of a prospective juror shall be made
into the defendant's failure to testify when
the defendant objects."  Ill. S. Ct. R.
431(b) (eff. May 1, 2007).

By removing the language that only required *Zehr*
questioning at defendant's request, our supreme court imposed a
*sua sponte* duty on courts to ask potential jurors individually or
in a group whether they accept these principles.  *Graham*, 393
Ill. App. 3d at 273, 913 N.E.2d at 103.  In carrying out this new
duty, trial courts are required to allow each juror an opportu-
nity to respond.  *Graham*, 393 Ill. App. 3d at 273, 913 N.E.2d at
103.

The trial in the present case occurred after the 2007
amendment became effective.  Thus, the trial court had a duty to
question the jurors about the Rule 431(b) principles and allow
the jurors to indicate whether they accepted the principles.

During *voir dire* in the present case, the trial court
addressed the Rule 431(b) principles as follows:

"The defendant in this case is presumed
to be innocent of the charges against him.
This presumption remains with the defendant
throughout every stage of the trial and dur-
ing the jury deliberations on the verdict,

and it is not overcome unless from all the evidence in this case the jury is convinced, both individually and collectively, that the defendant has been proven guilty beyond a reasonable doubt.

The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State throughout the case. The defendant is not required to prove his innocence."

The trial court then asked the potential jurors in groups, row by row, whether they understood and accepted those basic propositions of law. Everyone answered in the affirmative. After the court addressed individual issues with jurors, defense counsel began questioning. Defense counsel told the prospective jurors the following:

"Now [defendant] may or may not testify. We haven't made that decision yet, but that is his right to not testify and it is also his right to testify. If he chooses that he wishes to do that[,] would anybody have a problem if he chose not to testify or would you hold it against him in any way if he did not testify?"

All of the prospective jurors indicated they accepted the fourth Rule 431(b) principle. At the end of the trial, before the jury

retired for deliberations, the court properly instructed the jury on all four *Zehr* principles.

Defendant argues the trial court erred when it failed to advise the potential jurors of the third and fourth Rule 431(b) principles, *i.e.*, that defendant need not present evidence on his own behalf and his decision not to testify cannot be held against him. The court's statement that "defendant is not required to prove his innocence" would be interpreted by a reasonable jury to satisfy the third Rule 431(b) principle because if defendant is not required to prove his innocence, he has no reason to present evidence. As Rule 431(b) does not require the court to recite the principles verbatim, the court's language was sufficient to comply with the rule.

Despite its satisfaction of the third Rule 431(b) principle, the trial court erred by not addressing the fourth principle. While defendant concedes defense counsel rectified this error by addressing the fourth principle with the prospective jurors, the court itself is required to address this principle. Thus, the court did not follow the mandate of Rule 431(b), and this failure to comply constituted error.

Having found error, we next consider whether the error was so serious that it affected the fairness of defendant's trial. We note defendant does not argue the evidence was closely balanced. Instead, defendant contends a Rule 431(b) violation mandates automatic reversal because of the denial of the fundamental right to a fair trial by an impartial jury. As a result,

we confine our review to the second prong of the plain-error analysis. See *People v. Blue*, 189 Ill. 2d 99, 139, 724 N.E.2d 920, 941 (2000) (where a defendant has been denied the right to a fair trial, a reviewing court must remedy the error to preserve the integrity of the judicial process without regard to the evidence against the defendant).

"To determine whether defendant's right to a fair trial has been compromised, we employ the same test that this court uses whenever it applies the second prong of the plain error test." *Blue*, 189 Ill. 2d at 138, 724 N.E.2d at 940. We consider whether a substantial right has been affected to the extent we doubt that defendant's trial was fundamentally fair. *Blue*, 189 Ill. 2d at 138, 724 N.E.2d at 940-41. Regardless of the weight of the evidence presented against defendant, a new trial is essential where the trial court's error threatens the integrity of the judicial process. *Blue*, 189 Ill. 2d at 139, 724 N.E.2d at 941.

In *Thompson*, however, the supreme court clarified Rule 431(b) questioning is not indispensable to a fair trial and a violation thereof does not necessitate automatic reversal under the second prong of the plain-error analysis. *Thompson*, 238 Ill. 2d at 614-15, 939 N.E.2d at 414. Specifically, the supreme court found the following:

> "A finding that defendant was tried by a
> biased jury would certainly satisfy the sec-
> ond prong of plain-error review because it

- 10 -

would affect his right to a fair trial and challenge the integrity of the judicial process. Critically, however, defendant has not presented any evidence that the jury was biased in this case. Defendant has the burden of persuasion on this issue. We cannot presume the jury was biased simply because the trial court erred in conducting the Rule 431(b) questioning." *Thompson*, 238 Ill. 2d at 614, 939 N.E.2d at 413-14.

The *Thompson* court held that because defendant had failed to establish the court's Rule 431(b) violation resulted in a biased jury, defendant had failed to meet his burden of showing the error affected the fairness of his trial and challenged the integrity of the judicial process. *Thompson*, 238 Ill. 2d at 615, 939 N.E.2d at 414.

The supreme court also made it clear its reasoning applied regardless of whether the analysis took place under the amended or preamended version of the rule. *Thompson*, 238 Ill. 2d at 614, 939 N.E.2d at 414 ("the failure to conduct Rule 431(b) questioning does not necessarily result in a biased jury, regardless of whether that questioning is mandatory or permissive under our rule"). The court found while amended Rule 431(b) serves to promote the selection of an impartial jury, it is only one method of helping ensure the selection of a an impartial jury and "is not the only means of achieving that objective." *Thompson*, 238

- 11 -

Ill. 2d at 614, 939 N.E.2d at 414.  Finally, the supreme court held a Rule 431(b) violation "does not implicate a fundamental right or [a] constitutional protection."  *Thompson*, 238 Ill. 2d at 614-15, 939 N.E.2d at 414.  Instead, a Rule 431(b) violation "only involves a violation of [supreme court] rules."  *Thompson*, 238 Ill. 2d at 615, 939 N.E.2d at 414.

In this case, the fundamental fairness of defendant's trial was not jeopardized by the trial court's error.  Prior to questioning prospective jurors, the court admonished the venire of three of the four Rule 431(b) principles.  In addition, defense counsel questioned the potential jurors about the fourth principle.  Following closing arguments, the court instructed the jury on all four principles.  Most important, defendant does not show the jury acted with bias in reaching its verdict.  "Despite the trial court's failure to comply with Rule 431(b) in this case, there is no evidence that defendant was tried by a biased jury."  *Thompson*, 238 Ill. 2d at 611, 939 N.E.2d at 412.  Thus, we conclude the court's *voir dire* error did not rise to the level of plain error.  Accordingly, defendant has forfeited his Rule 431(b) claim.

### B. Closing Arguments

Defendant argues the State improperly commented on defendant's decision not to testify and his failure to present evidence during closing arguments.

The statements at issue are as follows:

"What did the defendant do?  Well, we

- 12 -

have heard testimony from the officer and the officer testified, hasn't been refuted or questioned in any way, you haven't heard any other testimony to refute what the officer said, and that is that the defendant got out of the vehicle, turned around and saw the officer's squad car and proceeded to run.

\*\*\*

I want to kind of go over the testimony of the door detail because I think it is important because what the officer said about what happened next shows that what happened here was a deliberate intentional act. It was definitely a knowing act. There was no accident here. There hasn't been any one testify that it was an accident."

Defendant contends the State told the jury "no one" refuted Officer Chambers and "no one" testified that the door-slamming incident was an accident. Defendant's characterization is not entirely accurate. The State actually said "you haven't heard any other testimony to refute what the officer said."

Improper remarks during closing argument are only reversible when they cause the defendant substantial prejudice and affect the defendant's right to an impartial and fair trial. *People v. Ward*, 371 Ill. App. 3d 382, 426, 862 N.E.2d 1102, 1144 (2007). When no witness besides defendant could provide evidence

- 13 -

contrary to the State's case, the State may argue the evidence is uncontradicted but may not repeatedly tell the jury "'no one'" contradicted the State's evidence. *People v. Edgecombe*, 317 Ill. App. 3d 615, 620-21, 739 N.E.2d 914, 919-20 (1st Dist. 2000). In *Edgecombe*, the State made the following references to the State's uncontradicted evidence:

> "'There has been no evidence whatsoever from that witness stand that says $60 wasn't taken ***. No one said $60 wasn't taken from them ***'; 'There's no one that got up there that said anything different ***'; 'There's no one that got up there and said the defendant was just standing there ***'; and 'Is there any evidence that you heard that this guy was just there? Nobody told you that.'" *Edgecombe*, 317 Ill. App. 3d at 621, 739 N.E.2d at 920.

The *Edgecombe* court found the repeated references to "'no one'" refuting the testimony "crossed the line" and were improper comments on the defendant's failure to testify. *Edgecombe*, 317 Ill. App. 3d at 621, 739 N.E.2d at 920. Here, the State used the phrase "no one" once while describing the door-slamming incident. While the comment was improper, the error did not deny defendant a fair and impartial trial. The trial court corrected this error with the following jury instructions: "The defendant is not required to prove his innocence. The fact that

- 14 -

the defendant did not testify must not be considered by you in any way in arriving at your verdict."  Thus, defendant suffered no prejudice because the jury knew the State was required to prove the elements of aggravated battery and it was to give no consideration to defendant's failure to testify.

## C. Twelve-Year Sentence

Defendant argues the trial court abused its discretion in imposing a 12-year sentence for his aggravated-battery conviction.  Trial courts are given broad discretion in fashioning appropriate criminal sentences.  *People v. Stacey*, 193 Ill. 2d 203, 209, 737 N.E.2d 626, 629 (2000).  Absent an abuse of the court's discretion, we will not alter the sentence on review.  *Stacey*, 193 Ill. 2d at 209-10, 737 N.E.2d at 629.

Here, defendant's aggravated-battery conviction was elevated to a Class 1 felony because defendant knew the victim was a peace officer (720 ILCS 5/12-4(e)(3) (West 2006)), rendering him eligible for a 4- to 15-year sentence (730 ILCS 5/5-8-1(a)(4) (West 2006)).  Despite defendant's stated remorse for his actions, the 12-year sentence was appropriate considering defendant's scant rehabilitative potential.  Defendant's criminal record dates back to 1995 when at 18 years old he was first convicted of unlawful use of a weapon.  Since then, defendant has been convicted of unlawful use of a weapon twice, once as a felon, manufacturing and delivering narcotics, criminal damage to property, assault, and numerous traffic violations.  The court observed that at age 31, defendant had amassed 10 felony convic-

tions.  In 2003, defendant was given a seven-year prison term for delivery of a controlled substance.  While on mandatory supervised release in 2007, defendant committed the offenses in the present case.  In light of defendant's penchant for criminal activity, the trial court did not abuse its discretion in rendering the statutorily permissible 12-year sentence.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.  As part of our judgment, we grant the State its $50 statutory assessment against defendant as costs of this appeal.

Affirmed.