THIRD DIVISION
April 29, 2011

No. 1-07-2826

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellee, | ) | of Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| AARON MAGALLANES, | ) | Honorable |
| | ) | Thomas V. Gainer, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE QUINN delivered the opinion of the court.

Justices Murphy and Steele concurred in the judgment and opinion.

**OPINION**

Following a jury trial, defendant was found guilty of burglary and sentenced, based on his criminal history, as a Class X offender (730 ILCS 5/5-5-3(c)(8) (West 2006)), to seven years in prison. On appeal, defendant contends that: (1) the circuit court erred in failing to grant his motion to quash arrest and suppress evidence where the police officer who stopped defendant lacked a reasonable suspicion that defendant was engaged in unlawful activity; (2) his conviction should be reversed where the circuit court failed to comply with Illinois Supreme Court Rule 431(b) (eff. May 1, 2007); and (3) he received ineffective assistance of counsel where trial counsel during opening remarks said it was defendant's "side of the story" that defendant merely found the items in the alley, but counsel failed to present defendant's testimony or any other evidence,

thereby opening the door for the State to comment during closing arguments on defendant's lack of evidence.

On December 23, 2009, this court affirmed defendant's conviction and sentence. *People v. Magallanes*, 397 Ill. App. 3d 72 (2009). On March 7, 2011, the Illinois Supreme Court denied Magallanes leave to appeal, but entered a supervisory order directing this court to vacate its judgment and reconsider the appeal in light of *People v. Thompson*, 238 Ill. 2d 598 (2010). People v. Magallanes, 239 Ill. 2d 573 (2011)(table). Accordingly, we vacate our prior judgment and reconsider Magallanes' appeal. For the following reasons, we again affirm defendant's conviction and sentence.

## I. BACKGROUND

Prior to trial, defendant filed a motion to quash arrest and suppress evidence, arguing that defendant's warrantless arrest was invalid because the off-duty police officer lacked reasonable suspicion of criminal activity that would have justified a brief stop under *Terry v. Ohio*, 392 U.S. 1 (1968). Defendant argued that because the police officer lacked reasonable suspicion to conduct a *Terry* stop, defendant's statements to police, the discovery of the items in his pickup truck, and the identification of the items by the alleged owner should be suppressed.

At the hearing on defendant's motion, Chicago police sergeant Mark Nottoli testified that at 1 a.m., on June 30, 2006, he was off duty and on his way home from work. Sergeant Nottoli was driving home in his personal vehicle, a convertible with the roof down, and wearing his police uniform. At about 1:30 a.m., Sergeant Nottoli observed defendant driving on 129th Street, near Saginaw and Marquette Avenues. Defendant was driving a pickup truck with a 24-foot extension

ladder protruding from the back, and a lawnmower, leaf blower and other lawn equipment in the back of the pickup truck. Sergeant Nottoli testified that he decided to initiate a stop of defendant's vehicle because the condition of the ladder protruding from the back of the pickup truck created an unsafe condition and violated a city ordinance. Sergeant Nottoli testified that he also decided to initiate a stop of defendant's vehicle because the sergeant lived in the area, did not recognize defendant's truck, and there had been a rash of garage burglaries in that neighborhood during that time. Sergeant Nottoli explained that defendant's vehicle had been "[e]xiting from an alley at that time of night with such a load with garages on both sides and [defendant's] load being things that are usually kept in the garage."

Sergeant Nottoli also testified that under the rules of the Chicago police department, even when off duty, he was required to take action when he saw what he believed to be illegal activity occurring. Sergeant Nottoli testified that he stopped defendant's vehicle at 130th Street and Saginaw Avenue. Sergeant Nottoli exited his vehicle and asked defendant for his driver's license and insurance card, which defendant failed to produce. Sergeant Nottoli then placed defendant into custody, advised him of his Miranda rights, and called "911" from his cellular phone to request the assistance of on-duty police officers. Sergeant Nottoli asked defendant where the materials in the back of his truck came from and defendant provided a statement. Sergeant Nottoli testified that he eventually learned that the items in the truck where taken from a garage in the 12800 block of Saginaw Avenue.

Based on the above evidence, the circuit court found that Sergeant Nottoli's testimony was credible and that he had the authority to initiate a stop of defendant's vehicle despite being

off duty at the time. The circuit court noted that Sergeant Nottoli testified that his primary purpose for stopping defendant's vehicle was the unsafe condition of the ladder protruding from the rear of the truck. The court also noted that Sergeant Nottoli testified that he lived in the neighborhood, that he did not recognize defendant or his truck, that there had been many garage burglaries in the area, and that defendant was driving down an alley in a truck that contained items commonly kept in garages. The circuit court explained that was "a secondary reason that gave rise to some suspicion that maybe the defendant had been involved in criminal activity." The circuit court then denied defendant's motion to quash arrest and suppress evidence.

During opening remarks to the jury, defense counsel argued that she would present defendant's "side of the story." Defense counsel argued that defendant had not committed the offense of burglary but, rather, that defendant had found the items in his truck when he was driving through the alley collecting junk discarded by others.

At trial, Sergeant Nottoli provided testimony similar to that during defendant's motion to quash arrest and suppress evidence. Sergeant Nottoli also testified that after he placed defendant into custody and advised him of his *Miranda* rights, defendant stated that he bought the items in his truck from "Murray's." Sergeant Nottoli testified that he did not believe defendant because the ladder and lawn trimmer had "Menard's" stickers on them. After other police officers arrived, Sergeant Nottoli accompanied them to look at garages in the area. Sergeant Nottoli testified that the gate and side garage door were open at 12805 South Saginaw Avenue. Sergeant Nottoli testified that he spoke to the resident of the house at that address, Frank Farro. Farro identified a sports chair, extension ladder and lawn mower in the back of defendant's truck as belonging to

him.

Frank Farro testified that he lived at 128th Street and Saginaw Avenue. At about 1:30 a.m., on June 30, 2006, Farro was awakened by police officers knocking on his door. Farro told the police officers that he did not leave his gate or side door to his garage open. Farro went out to his garage with the officers and noticed that the gate and side garage door were open. Farro also observed that his lawnmower was no longer in his garage. After looking in defendant's pickup truck, Farro identified his lawnmower, an extension ladder, and a sports chair. Farro testified that these items had been in his garage, that he did not know defendant, and that he had not given defendant permission to enter his garage or take any of the items.

Detective Daniel O'Connor testified that he was on patrol with his partner on the morning in question and responded to Sergeant Nottoli's call for assistance. Officer O'Connor and his partner arrived at the scene, took defendant into custody, and transported defendant to the police station. Detective O'Connor testified that he advised defendant of his *Miranda* rights as defendant was processed for the burglary charge. Defendant then stated, "The door was open. I didn't break in."

After the State rested its case, defendant indicated that he did not want to testify. The circuit court admonished defendant about his right to chose whether or not to testify, and despite defense counsel's prior indication that defendant's "side of the story" was that he had merely found the items in the alley, defendant stated that he was choosing not to testify.

Based on this evidence, the jury found defendant guilty of burglary and defendant was subsequently sentenced to seven years in prison. Defendant now appeals.

No. 1-07-2826

## II. ANALYSIS

### A. Defendant's Motion to Quash Arrest and Suppress Evidence

Defendant argues that the circuit court erred in denying his motion to quash arrest and suppress evidence where the police officer who stopped defendant's vehicle lacked reasonable suspicion to believe that defendant was engaged in unlawful activity.

Review of a trial court's ruling on a motion to quash arrest and suppress evidence presents mixed questions of fact and law. *People v. Bennett*, 376 Ill. App. 3d 554, 563 (2007). " 'The trial court's factual and credibility determinations are accorded great deference, and we reverse only if the findings are against the manifest weight of the evidence.' " *Bennett*, 376 Ill. App. 3d at 563 (quoting *People v. Novakowski*, 368 Ill. App. 3d 637, 640 (2006)). " 'Legal conclusions, however, are reviewed *de novo*.' " *Bennett*, 376 Ill. App. 3d at 563 (quoting *Novakowski*, 368 Ill. App. 3d at 640). " 'Therefore, we review the ultimate determination of whether the evidence should have been suppressed *de novo*.' " *Bennett*, 376 Ill. App. 3d at 563 (quoting *Novakowski*, 368 Ill. App. 3d at 640).

Defendant argues that the police officer lacked reasonable suspicion to justify an initial stop of defendant's vehicle, pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), based on the officer's belief that defendant's truck violated a city ordinance and may have been connected to recent burglaries in the area. Under *Terry v. Ohio*, where a police officer observes unusual conduct, he may stop and detain a person without probable cause to investigate possible criminal activity. *Terry v. Ohio*, 392 U.S. at 30. To justify a *Terry* stop, an officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts,

-6-

reasonably warrant [the] intrusion." *Terry v. Ohio*, 392 U.S. at 21. Illinois has codified the holding of *Terry* in section 107-14 of the Code of Criminal Procedure of 1963: "A peace officer *** may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense *** and may demand the name and address of the person and an explanation of his actions." 725 ILCS 5/107-14 (West 2006). We apply a *de novo* standard of review to determine the existence of 'reasonable suspicion' supporting a *Terry* stop. *Bennett*, 376 Ill. App. 3d at 564.

In this case, Officer Nottoli testified that he decided to initiate a stop of defendant's vehicle because the condition of the ladder protruding from the back of the pickup truck created an unsafe condition and violated a city ordinance. Sergeant Nottoli also testified that he decided to stop defendant's vehicle because the sergeant lived in the area, he did not recognize defendant's truck, and there had been a rash of garage burglaries in that neighborhood during that time, and defendant's vehicle exited from an alley at night and contained items usually kept in garages.

Defendant asserts that Sergeant Nottoli's stop was not justified where defendant was not in violation of section 9-72-060(e) of the Chicago Municipal Code (Chicago Municipal Code §9-72-060(e) (amended Oct. 7, 1998)) for which he was subsequently cited. Defendant maintains that the load protruding from the *rear* of his vehicle did not violate section 9-72-060(e), which provides that the load upon the *front* of a vehicle "shall not extend more than three feet beyond the front wheels of such vehicle or the front bumper of such vehicle" Chicago Municipal Code

No. 1-07-2826

§9-72-060(e) (amended Oct. 7, 1998)). However, defendant did not present this argument before the circuit court, and arguments made for the first time on appeal are waived. *People v. Brooks*, 187 Ill. 2d 91, 128 (1999).

Moreover, we find that the facts Sergeant Nottoli testified to provided the minimal articulable suspicion required to stop defendant's vehicle. Defendant argues that his presence in an area of suspected criminal activity was not enough to support a reasonable suspicion to justify a *Terry* stop. However, defendant's presence in the area of recent garage burglaries was not the only factor considered by Sergeant Nottoli. Sergeant Nottoli explained that there had been a rash of garage burglaries in the neighborhood, that he lived in the area and did not recognize defendant's vehicle, and that defendant's vehicle was exiting an alley late at night containing a number of items usually kept in garages. We therefore conclude that the investigatory stop was proper and find no error in the circuit court's denial of defendant's motion to quash arrest and suppress evidence.

B. Compliance With Illinois Supreme Court Rule 431(b)

Defendant contends that the trial judge violated Rule 431(b) by failing to ask the potential jurors whether they accepted all of the principles set forth in *People v. Zehr*, 103 Ill. 2d 472 (1984). Defendant maintains that the trial judge's error requires automatic reversal, not subject to harmless-error analysis, where he failed to conduct the *voir dire* in accordance with *Zehr* and Rule 431(b). The State argues that defendant forfeited the argument by not objecting in the trial court or in a posttrial motion and that any shortcomings in the conduct of the *voir dire* should be deemed harmless where the alleged error is not "structural" error requiring automatic reversal.

No. 1-07-2826

### 1. Standard of Review

This issue concerns compliance with a supreme court rule, and, therefore, this court's review is *de novo*. *People v. Lloyd*, 338 Ill. App. 3d 379, 384 (2003).

### 2. The Plain-Error Doctrine

Defendant failed to object at trial to the error he now claims and failed to raise the claim of error in his motion for a new trial. Therefore, the alleged error has not been properly preserved for this court's review. *People v. Lovejoy*, 235 Ill. 2d 97, 148 (2009) (citing *People v. Enoch*, 122 Ill. 2d 176, 186 (1988)). This court recognizes, as defendant suggests, the "application of the waiver rule is less rigid where the basis for the objection is the trial judge's conduct." *People v. Nevitt*, 135 Ill. 2d 423, 455 (1990). Thus, defendant maintains that this court should review his claim pursuant to the plain-error doctrine (Ill. S. Ct. R. 615(a)).

In the seminal case of *People v. Thurow*, 203 Ill. 2d 352 (2003), our supreme court discussed the application of the plain-error doctrine.

"Though plain-error analysis normally requires the same kind of inquiry as does harmless-error review, there is an 'important difference' between the two. *United States v. Olano*, 507 U.S. 725, 734, 123 L. Ed. 2d 508, 520, 113 S. Ct. 1770, 1778 (1993). In a harmless-error analysis, which applies where, as in the case at bar, the defendant has made a timely objection, it is the State that 'bears the burden of persuasion with respect to prejudice.' *Olano*, 507 U.S. at 734, 123 L. Ed. 2d at 520, 113 S. Ct. at 1778. In other words, the State must prove beyond a reasonable doubt that the jury verdict would have been the same absent the error.

-9-

See *Chapman v. California*, 386 U.S. 18, 24, 17 L. Ed. 2d 705, 710-11, 87 S. Ct. 824, 828 (1967); *Neder v. United States*, 527 U.S. 1, 19, 144 L. Ed. 2d 35, 53, 119 S. Ct. 1827, 1838 (1999). The situation is different under a plain-error analysis, which applies where the defendant has failed to make a timely objection. There, '[i]t is the defendant rather than the [State] who bears the burden of persuasion with respect to prejudice.' *Olano*, 507 U.S. at 734, 123 L. Ed. 2d at 520, 113 S. Ct. at 1778. 'In most cases, a court of appeals cannot correct the forfeited error unless the defendant shows that the error was prejudicial.' *Olano,* 507 U.S. at 734, 123 L. Ed. 2d at 520, 113 S. Ct. at 1778." *Thurow*, 203 Ill. 2d at 363.

When assertions of instructional error are raised, our supreme court has consistently applied the principles of Illinois Supreme Court Rules 451(c) and 615(a). Rule 451(c) is applicable when the defendant fails to object to the alleged instructional error at trial. Ill. S. Ct. R. 451(c) (eff. July 1, 2006). Rule 615(a) is applicable when the defendant objected at trial but failed to preserve the instructional issue by including it in a posttrial motion. Ill. S. Ct. R. 615(a). "[P]lain-error analyses under Supreme Court Rules 451(c) and 615(a) are construed identically." *People v. Durr*, 215 Ill. 2d 283, 296-97 (2005) (citing *People v. Keene*, 169 Ill. 2d 1, 32 (1995)).

Supreme Court Rule 451(c) provides that "substantial defects are not waived by failure to make timely objections thereto if the interests of justice require." Ill. S. Ct. R. 451(c) (eff. July 1, 2006). Supreme Court Rule 615(a) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Ill. S.

No. 1-07-2826

Ct. R. 615(a).

In *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005), our supreme court held that "the plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." Under the first prong, the defendant must prove "prejudicial error," by showing both that there was plain error and that "the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him." *Herron*, 215 Ill. 2d at 187. Under the second prong, the defendant must prove that there was plain error and that "the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *Herron*, 215 Ill. 2d at 187. Prejudice to the defendant is presumed because of the importance of the right involved, " '*regardless* of the strength of the evidence.' " (Emphasis in original.) *Herron*, 215 Ill. 2d at 187 (quoting *People v. Blue*, 189 Ill. 2d 99, 138 (2000)). In both instances, the burden of persuasion remains with the defendant. *Herron*, 215 Ill. 2d at 187.

Defendant argues that under the second prong, the trial court's failure to comply with Rule 431(b) denied him the basic guarantees for obtaining a fair and impartial jury such that his conviction must be automatically reversed. Before considering whether the plain-error exception applies, we must first determine whether any error occurred in this case. *Lovejoy*, 235 Ill. 2d at 148.

### 3. The Trial Court's *Voir Dire*

The trial judge commenced *voir dire* by addressing the entire venire. The trial judge told

the venire:

> "[A]ll persons charged with a crime are presumed to be innocent and [it] is the burden of the State who has brought the charges to prove the defendant guilty beyond a reasonable doubt. What this means is the defendant has no obligation to testify in his own behalf or to call any witnesses in his defense. He may simply sit here and rely upon what he and his attorneys perceive to be the inability of the State to present sufficient evidence to meet their burden of proof of guilt beyond a reasonable doubt. Should that happen, you will have to decide this case on a basis of the evidence presented by the prosecution. The fact that the defendant chooses not to testify must not be considered by you in anyway in arriving at your verdict. ***
>
> The bottom line, however, is this: There is no burden upon the defendant to prove his innocence. It is the State's burden to prove him guilty beyond a reasonable doubt."

A short time later, the trial judge questioned the potential jurors as follows:

> "I spoke about the fact that the defendant is presumed to be innocent of the charges against him and that this presumption stays with the defendant through the trial and is not overcome unless and until the jury determine[s] the defendant is guilty beyond a reasonable doubt. Is there anyone among you who disagrees with that fundamental principle of our law. If so, please, raise your hand. The record should reflect that no hands are raised.
>
> I also spoke about the fact that the State bears the burden of proving the defendant guilty beyond a reasonable doubt. Is there anyone among you who disagrees with that

fundamental principle of law. If so, please, raise your hand. The record should reflect that there are no hands raised.

Because the defendant is presumed to be innocent, he does not have to present any evidence at all in this case. He can simply rely on the presumption of innocence. Is there anyone among you who disagrees with that fundamental principle of law. If so, please, raise your hand. The record [should] reflect that no hands are raised."

Before the trial judge commenced individual questioning of the potential jurors, defense counsel asked the judge to "question each juror individually about the defendant not testifying and burden of proof." The trial judge responded, "I will pretty much ask the same questions that I just asked. I can do that. That's not a problem. "

During individual questioning of the potential jurors, the trial judge asked the jurors questions similar to those above, pertaining to the presumption of innocence, the State's burden of proof, and the proposition that defendant need not prove his innocence.

4. Did the *Voir Dire* Procedure Comply With Rule 431(b)?

In *Zehr*, our supreme court held that "essential to the qualification of jurors in a criminal case is that they know that a defendant is presumed innocent, that he is not required to offer any evidence in his own behalf, that he must be proved guilty beyond a reasonable doubt, and that his failure to testify in his own behalf cannot be held against him." *Zehr*, 103 Ill. 2d at 477. In response to *Zehr*, Supreme Court Rule 431(b) was amended in 1997 to provide that, if requested by the defendant, the trial court was required to ask the jurors, individually or in a group, whether they understood and accepted the *Zehr* principles. Ill. S. Ct. R. 431(b) (eff. May 1, 2007).

Because questioning the jurors with respect to the *Zehr* principles was contingent on a request by the defendant, cases construing the 1997 amendment found no duty on the part of the trial judge to *sua sponte* question the jurors as to the *Zehr* principles. See *People v. Gilbert*, 379 Ill. App. 3d 106, 109 (2008); *People v. Williams*, 368 Ill. App. 3d 616, 623 (2006); *People v. Foreman*, 361 Ill. App. 3d 136 (2005).

In 2007, Rule 431(b) was amended to impose "an affirmative *sua sponte* duty on the trial courts to ask potential jurors in each and every case whether they understand and accept the *Zehr* principles." *People v. Graham*, 393 Ill. App. 3d 268, 273 (2009). Rule 431(b) currently provides as follows:

> "The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.
>
> The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Ill. S. Ct. R. 431(b) (eff. May 1, 2007).

Defendant's trial commenced on August 22, 2007, which was several months after the effective

date of the 2007 amendments. Therefore, the 2007 amended version of Rule 431(b) governs this case.

Rule 431(b) requires the trial court to address all four *Zehr* principles in a manner that allows each venireperson an opportunity to respond whether he or she understands and accepts those principles. The only exception to this requirement applies to the principle that the defendant's failure to testify cannot be held against him when the defendant objects to inquiry being made into that principle. Ill. S. Ct. R. 431(b)(4) (eff. May 1, 2007) (no inquiry "shall be made into the defendant's failure to testify when the defendant objects").

In this case, the trial court questioned each venireperson as to whether he or she understood and accepted the first three *Zehr* principles in a manner that allowed each venireperson an opportunity to respond. However, the court failed to question and allow each venireperson to respond to whether he or she understood and accepted the fourth *Zehr* principle, *i.e.*, that the defendant's failure to testify could not be held against him (hereinafter referred to as the fourth *Zehr* principle). The record does not reflect that defense counsel objected to inquiry being made into the fourth *Zehr* principle, such that the trial court would not be required to question each venireperson with respect to that principle. Rather, the record shows that defense counsel affirmatively requested that the trial court "question each juror individually about the defendant not testifying." Therefore, error clearly occurred here because the trial court did not question each venireperson as to whether he or she understood and accepted the fourth *Zehr* principle. While we note that the trial court began the *voir dire* with a general statement of law which included all four of the *Zehr* principles, the court failed to ascertain whether all of the

potential jurors understood and accepted the fourth *Zehr* principle to fully comply with Rule

431(b).  See Ill. S. Ct. R. 431(b), Committee Comments (eff. May 1, 2007)("The new language is

intended to ensure compliance with the requirements of *People v. Zehr,* 103 Ill. 2d 472 (1984).  It

seeks to end the practice where the judge makes a broad statement of the applicable law followed

by a general question concerning the juror's willingness to follow the law").

### 5. Does the Error Require Automatic Reversal

Defendant did not object to the error in the trial court.  However, defendant contends that

under the second prong of the plain-error doctrine, the trial court's failure to comply with Rule

431 deprived him of a fair trial such that automatic reversal is required and the error is not subject

to harmless- error analysis.  The State maintains that the failure to fully comply with Rule 431 was

not a "structural error" requiring automatic reversal but, rather, that the error was harmless.

As previously mentioned, in discussing the second prong of plain-error analysis, our

supreme court in *Herron* cited its prior decision in *People v. Hopp*, 209 Ill. 2d 1 (2004).  In

*Hopp*, our supreme court considered whether the failure to include a definition of "first degree

murder" in the instructions for a defendant charged with conspiracy to commit first degree murder

constituted plain error.  The court affirmed the defendant's conviction, holding:

> "Without referring to the record to explain how defendant's trial may have been
>
> rendered unfair by the omission of the instruction defining first degree murder, the
>
> appellate court held that the omission was 'a substantial and prejudicial defect.'
>
> [citation.]  However, we have never held any such omission to be plain error
>
> without considering the effect that the omission had on defendant's trial.  On the

contrary, the result in *People v. Underwood*, demonstrates that omission of the definition of a term used to instruct the jury on the essential issue in the case is not necessarily plain error. [citation.] Furthermore, even an incorrect instruction on an element of the offense is not necessarily reversible error." *Hopp*, 209 Ill. 2d at 10 (citing *People v. Underwood*, 72 Ill. 2d 124, 130-31 (1978)).

Our supreme court concluded:

"[A]n omitted jury instruction constitutes plain error only when the omission creates a serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law, so as to severely threaten the fairness of the trial. This rule does not require that defendant prove beyond doubt that her trial was unfair because the omitted instruction misled the jury to convict her. It does require that she show that the error caused a *severe* threat to the fairness of her trial." (Emphasis in original.) *Hopp*, 209 Ill. 2d at 12.

In *Herron*, 215 Ill. 2d at 181-83, our supreme court also considered its holding in *Thurow* and its holding in *People v. Crespo*, 203 Ill. 2d 335 (2001), which reviewed whether an extended-term sentence based on a judge's finding that the crime was "brutal and heinous" violated the holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), under a plain-error analysis: "[In *Crespo*,] [w]e then returned to [*United States v.*] *Cotton*, [535 U.S. 625 (2002),] where the [United States] Supreme Court applied the plain-error test of Federal Rule of Criminal Procedure 52(a) to a forfeited claim." *Herron*, 215 Ill. 2d at 182. In *Herron*, our supreme court further explained:

"We noted that the Court in *Cotton* assumed the defendant's substantial rights were affected by the *Apprendi* violation, but held that error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings because the government presented overwhelming evidence of guilt. See *Crespo*, 203 Ill. 2d at 348. We reached 'the same conclusion by the same reasoning.' *Crespo*, 203 Ill. 2d at 348. Because the State presented overwhelming evidence that the murder was brutal and heinous, 'there [was] no basis for concluding that the *Apprendi* violation "seriously affected the fairness, integrity or public reputation of judicial proceedings." ' *Crespo*, 203 Ill. 2d at 348." *Herron*, 215 Ill. 2d at 182-83. Our supreme court concluded:

"We simply referred to the plain-error standard in *Cotton* and [*United States v.*] *Olano*, [507 U.S. 725 (1993),] because, at its core, it is the same standard we already use. Ultimately, plain error involves the same considerations in federal and state court. The differences between the federal and the state plain-error tests are a function of the common law process. Over time, different justices of different courts have added their idiosyncratic language to the case law, but changes in the language of plain error have not resulted in changes in the meaning of plain error." *Herron*, 215 Ill. 2d at 186.

In *People v. Davis*, 233 Ill. 2d 244 (2009), the defendant challenged his first degree murder conviction. The jury was instructed on intentional or knowing murder and felony murder predicated on aggravated battery, and the jury returned a general guilty verdict of first degree

murder. *Davis*, 233 Ill. 2d at 247. The defendant never requested a special verdict form. On appeal, the defendant argued that it was reversible error to instruct the jury that felony murder could be predicated upon aggravated battery because the conduct forming the basis of the aggravated battery was inherent in the murder. *Davis*, 233 Ill. 2d at 247. The defendant also argued that the one-good-count presumption, which provides that a general verdict of guilty on a multiple count indictment is interpreted to be a finding of guilt on each count, was unconstitutional and should not apply. *Davis*, 233 Ill. 2d at 265-66.

Our supreme court disagreed with the defendant and found that any error in instructing the jury was harmless. *Davis*, 233 Ill. 2d at 274-75. In *Davis*, the court explained that the United States Supreme Court had recently resolved this issue in *Hedgpeth v. Pulido*, 555 U.S. 57, ___, 129 S. Ct. 530, 532 (2008) (*per curiam*) . In *Pulido*, the United States Supreme Court found that where a jury returns a general guilty verdict after being instructed on alternative theories of guilt, but one of the alternative theories upon which the verdict could have been based was invalid, the error in so instructing the jury does not amount to a "structural" defect and is subject to harmless-error analysis. The Supreme Court explained, "*Neder* makes clear that harmless-error analysis applies to instructional errors so long as the error at issue does not categorically ' "vitiat[e] *all* the jury's findings." ' " (Emphasis in original.) *Pulido*, 555 U.S. at ___, 129 S. Ct. at 532, quoting *Neder v. United States*, 527 U.S. 1, 11 (1999) (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 281 (1993)). Applying *Pulido*, our supreme court in *Davis* held that "even if we were to find that a constitutional due process error occurred in instructing the jury on felony murder or that the one-good-count presumption is questionable, it would still not require automatic reversal of

defendant's murder conviction." *Davis*, 233 Ill. 2d at 273. "Accordingly, we hold that the instant felony-murder instruction, even if erroneous, was a typical trial error that did not amount to a structural defect that required automatic reversal. It would be analogous to the *Apprendi* cases that we have decided such as *People v. Nitz*, 219 Ill. 2d 400 (2006), and *People v. Thurow*, 203 Ill. 2d 352 (2003)." *Davis*, 233 Ill. 2d at 273. Our supreme court then concluded that under the facts of the case, the evidence of intentional and strong probability murder based on accountability was not closely balanced and, therefore, any error in instructing the jury on felony murder was harmless. *Davis*, 233 Ill. 2d at 275.

In *Nitz*, our supreme court considered the second prong of plain error under *Herron*. *Nitz*, 219 Ill. 2d at 415. Our supreme court explained:

"*Herron*'s two prongs establish two categories of plain error: prejudicial errors, which may have affected the outcome in a closely balanced case, and presumptively prejudicial errors, which must be remedied although they may not have affected the outcome. *Herron*, 215 Ill. 2d at 185. Our analysis in *Crespo* and *Kaczmarek* indicates that the *Apprendi* violation defendant complains of in this case - a sentence based on a judge-made finding that a murder was brutal or heinous - is not a presumptively prejudicial error that must be remedied regardless of its effect on the trial's outcome. In each of those cases, we required the defendants to prove that they were prejudiced by the error. See *Crespo*, 203 Ill. 2d at 348; [*People v.*] *Kaczmarek*, 207 Ill. 2d [288, 302 (2003)]. Thus, the second prong of the *Herron* plain-error analysis is inapplicable to defendant's case."

No. 1-07-2826

*Nitz*, 219 Ill. 2d at 415-16.

In *Davis*, our supreme court's plain-error analysis referenced the "structural defect" standard of federal error analysis. Under federal criminal jurisprudence, not all constitutional errors require reversal. *Pulido*, 555 U.S. at __, 129 S. Ct. at 532. The United States Supreme Court divides constitutional errors into two different classes: "trial error[s]" and "structural" errors. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006). Trial errors are those errors that " 'occurred during [the] presentation of the case to the jury' and their effect may 'be quantitatively assessed in the context of other evidence presented in order to determine whether [they were] harmless beyond a reasonable doubt.' " *Gonzalez-Lopez*, 548 U.S. at 148 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 307-08 (1991)). Most constitutional errors fall into the trial error classification. *Gonzalez-Lopez*, 548 U.S. at 148. In contrast, structural errors " 'defy analysis by "harmless-error" standards' because they 'affec[t] the framework within which the trial proceeds,' and are not 'simply an error in the trial process itself.' " *Gonzalez-Lopez*, 548 U.S. at 148 (quoting *Fulminante*, 499 U.S. at 309-10). The Supreme Court has determined that structural errors occur only in a "very limited class of cases" (internal quotation marks omitted) (*Neder*, 527 U.S. at 8), including the denial of the right to counsel, the denial of the right of self-representation, the denial of the right to public trial, and the denial of the right to trial by jury resulting from the giving of a defective reasonable doubt instruction (*Gonzalez-Lopez*, 548 U.S. at 149).

In *Puckett v. United States*, 556 U.S. __, 129 S. Ct. 1423 (2009), the United States Supreme Court explained that federal " 'plain-error review' - involves four steps, or prongs.

First, there must be an error or defect - some sort of '[d]eviation from a legal rule' - that has not been intentionally relinquished or abandoned, *i.e.*, affirmatively waived, by the appellant. [Citation.] Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. [Citation.] Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it 'affected the outcome of the district court proceedings.' " *Puckett,* 556 U.S. at __, 129 S. Ct. at 1429 (quoting *United States v. Olano*, 507 U.S. 725, 732-34 (1993)). "Fourth and finally, if the above three prongs are satisfied, the court of appeals has the *discretion* to remedy the error-discretion which ought to be exercised only if the error ' "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." ' " (Emphasis in original.) *Puckett*, 556 U.S. at __, 129 S. Ct. at 1429 (quoting *United States v. Olano*, 507 U.S. at 736, quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)). "Meeting all four prongs is difficult, 'as it should be.' " *Puckett*, 556 U.S. at __, 129 S. Ct. at 1429 (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004)).

"This limitation on appellate-court authority serves to induce the timely raising of claims and objections, which gives the district court the opportunity to consider and resolve them. That court is ordinarily in the best position to determine the relevant facts and adjudicate the dispute. In the case of an actual or invited procedural error, the district court can often correct or avoid the mistake so that it cannot possibly affect the ultimate outcome. And of course the contemporaneous-objection rule prevents a litigant from ' "sandbagging " ' the court-remaining silent about his objection and belatedly raising the error only if the

-22-

case does not conclude in his favor. Cf. *Wainwright v. Sykes*, 433 U.S. 72, 89 \*\*\* (1977); see also *United States v. Vonn*, 535 U.S. 55, 72 \*\*\* (2002)." *Puckett*, 556 U.S. at __, 129 S. Ct. at 1428.

It must be remembered that in *Herron*, 215 Ill. 2d at 186, our supreme court explained that it has relied on the federal plain-error standard "because, at its core, it is the same standard we already use." Here, defendant argues that the trial court's failure to comply with Rule 431 was a "structural" error which deprived him of a fair trial such that automatic reversal is required under the second type of plain error. We disagree.

In *People v. Glasper*, 234 Ill. 2d 173, 200 (2009), our supreme court considered whether the trial judge's denial of defense counsel's request to question jurors as to the *Zehr* principles, in violation of the prior version of Rule 431(b), was subject to harmless-error analysis. Our supreme court cited its previous decision in *People v. Rivera*, 227 Ill. 2d 1, 26 (2007) (*Rivera II*), in which the court determined that a violation of the right to seven peremptory challenges afforded a defendant pursuant to Supreme Court Rule 434(d) was subject to harmless-error review. In *Glasper*, our supreme court noted that the defendant in *Rivera II* challenged this holding and filed a petition for a writ of *certiorari*, which the United States Supreme Court granted. The Supreme Court affirmed the judgment in *Rivera II* and found no error in applying the harmless-error doctrine where the defendant had been denied his state law right to a peremptory challenge. *Glasper*, 234 Ill. 2d at 195 (citing *Rivera v. Illinois*, 556 U.S. __, 129 S. Ct. 1446 (2009)). Our supreme court in *Glasper* explained:

"The core issue presented to this court in *Rivera II* is the same as that

presented here: whether the trial court's error, based on a violation of supreme court rule, denied the defendant his constitutional right to a fair and impartial jury such that the error was presumptively prejudicial and required automatic reversal. The State's response is also the same: any error made by the trial court would be subject to harmless-error analysis and does not warrant automatic reversal. In *Rivera II*, we agreed with the State, and we reach the same conclusion in this case." *Glasper,* 234 Ill. 2d at 194.

Our supreme court further explained that the defendant in *Glasper*, like the defendant in *Rivera II*, claimed that his sixth amendment right to a fair and impartial jury was violated when the trial court refused to question the venire in accordance with Rule 431(b)(4) and its holding in *Zehr*. However, the court noted that, as intimated by *Rivera II*, the defendant's constitutional rights were not compromised by the trial court's Rule 431(b)(4) violation. Our supreme court explained: "Defendants do not have a right to Rule 431(b)(4) questioning under either the United States or the Illinois Constitution. A defendant's 'right' to such questioning in Illinois courts is the product of this court's inherent power to make rules regulating the conduct of the circuit courts. [Citation.] While the rule is designed to help ensure that defendants are tried before a fair jury, we cannot say that Rule 431(b)(4) questioning is indispensable to a fair trial." *Glasper*, 234 Ill. 2d at 196.

Our supreme court also revisited its decision in *People v. Zehr*, 103 Ill. 2d 472 (1984), and explained that *Zehr* did not address whether the error at issue in that case was subject to harmless-error analysis because none of the parties had raised the issue. *Glasper*, 234 Ill. 2d at

190. The court recognized that the language in *Zehr* could be construed to suggest that automatic reversal is required where Rule 431(b)(4) questioning is not conducted. *Glasper*, 234 Ill. 2d at 197. However, the court opined that "[r]equiring *per se* reversal for a Rule 431(b)(4) violation *** would be contrary to principles espoused by this court in other, analogous cases decided after *Zehr*." *Glasper*, 234 Ill. 2d at 197. Our supreme court noted that, in *People v. Daniels*, 172 Ill. 2d 154, 165 (1996), it expressed a reluctance to hold that automatic reversal was required for a violation of a "right" conferred upon defendants by rule of the supreme court. *Glasper*, 234 Ill. 2d at 197. Our supreme court explained, "This reluctance makes sense when we consider that automatic reversal is only required where an error is deemed 'structural,' *i.e.*, a systematic error which serves to 'erode the integrity of the judicial process and undermine the fairness of the defendant's trial.' " *Glasper*, 234 Ill. 2d at 197-98 (quoting *Herron*, 215 Ill. 2d at 186). The court also reasoned: "The Supreme Court has recognized errors as ' "structural" and thus subject to automatic reversal, only in a 'very limited class of cases.' " (Internal quotation marks omitted.) *Glasper*, 234 Ill. 2d at 198 (quoting *Neder*, 527 U.S. at 8, quoting *Johnson v. United States*, 520 U.S. 461, 468-69 (1997)). The court explained, "The error alleged herein is not included in this class." *Glasper*, 234 Ill. 2d at 198.

In *Glasper*, our supreme court further reasoned that automatic reversal is not even required in cases where the prosecution makes an erroneous reference to a defendant's decision to exercise his constitutional right to remain silent in violation of *Doyle v. Ohio*, 426 U.S. 610, 619 (1976). *Glasper*, 234 Ill. 2d at 198. In *Doyle*, the Supreme Court held that the prosecution's use of a defendant's post-*Miranda* silence for impeachment purposes is generally a due process

violation. *Doyle*, 426 U.S. at 619. Our supreme court explained: "It would be inconsistent for this court to hold that a trial court's failure to question a venire regarding a defendant's decision not to testify in violation of Rule 431(b)(4) requires automatic reversal, when we have repeatedly held that automatic reversal is not required when a prosecutor mentions a defendant's post-*Miranda* silence and commits a *Doyle* violation." *Glasper*, 234 Ill. 2d at 198 (citing *People v. Dameron*, 196 Ill. 2d 156, 164-66 (2001) (listing cases where our supreme court concluded that a *Doyle* violation amounted to harmless-error)). "Our precedent with respect to *Doyle* violations is significant to our instant analysis when we consider that Rule 431(b)(4) has its roots in the constitutional privilege against self-incrimination." *Glasper*, 234 Ill. 2d at 198 (citing *Zehr*, 103 Ill. 2d at 477).

Accordingly, our supreme court concluded: "[T]he trial court's error in this case does not rise to the level of structural error. We recognize that we are free to determine that the failure to question the venire in accordance with *Zehr* and Rule 431(b)(4) is an error so severe that reversal is required, regardless of whether the error would be deemed structural under federal law." *Glasper*, 234 Ill. 2d at 199-200. Our supreme court further concluded that a violation of Rule 431(b), as occurred in that case, does not require automatic reversal and is amenable to harmless-error review. *Glasper*, 234 Ill. 2d at 200.

Our supreme court also reviewed its decision in *Smith*, in which the court declined to conduct a harmless-error review because the issue involved a basic fundamental protection guaranteed by the sixth amendment to the federal constitution, namely, the right to have a jury, rather than a judge, determine an accused's guilt. *People v. Smith*, 233 Ill. 2d 1, 24-25 (2009). In

*Glasper*, our supreme court held that the error as described in *Smith* therefore constituted "structural" error unlike the error presented in *Glasper*. *Glasper*, 234 Ill. 2d at 192. In *Davis*, the court distinguished its holding from *Smith* in finding: "The present case is a world away from *Smith*. Here, defendant did not object to the general verdict form and did not request a special verdict form. Again, the holding of *Smith* was conditioned on the trial court's refusal to grant such a request [to instruct the jury using separate verdict forms for felony murder and intentional or knowing murder]." *Davis*, 233 Ill. 2d at 273.

In *Glasper*, our supreme court explained that its holding was "limited to the version of Rule 431(b)(4) that was in effect at the time of the instant trial, and would not necessarily apply to subsequent versions of the rule. We also make clear that we are not holding that a Rule 431(b)(4) violation could never result in reversible error." *Glasper*, 234 Ill. 2d at 200. Our supreme court further held, "We reject the idea that the trial court's failure to conduct Rule 431(b)(4) questioning makes it inevitable that the jury was biased, particularly when the record before us demonstrate[d] that the jurors in this case were both admonished and instructed against forming an adverse inference against defendant based on his decision not to testify." *Glasper*, 234 Ill. 2d at 201.

In *Glasper*, our supreme court also considered the defendant's argument that the court cannot assess whether the jury was biased because the Rule 431(b)(4) question was not asked. Our supreme court noted that it rejected an identical claim by the defendant in *Rivera II* that the error could not be " 'qualitatively assessed for harm.' " *Rivera II*, 227 Ill. 2d at 20. In *Rivera II*, the court held, " '[I]t may in fact be possible to qualitatively assess for harm *** by applying the

rational juror standard to the evidence adduced against defendant. If the evidence is so overwhelming that no rational jury *** would have acquitted defendant of the offense, then [a particular juror's] presence on the jury cannot be said to have prejudiced him.' " *Glasper*, 234 Ill. 2d at 201 (quoting *Rivera II*, 227 Ill. 2d at 22). Our supreme court further noted that the United States Supreme Court has taken a similar approach in *Carter v. Kentucky*, 450 U.S. 288 (1981), where the Supreme Court held that a criminal defendant has a fifth amendment right to a "no-adverse-inference" jury instruction if the defendant requests such an instruction. *Glasper*, 234 Ill. 2d at 201. Our supreme court explained that while the Supreme Court has never reached the issue of whether a *Carter* error may be considered harmless, several federal appellate courts have determined that *Carter* errors may be deemed harmless where the evidence against the defendant is overwhelming. *Glasper*, 234 Ill. 2d at 201-02 (citing *United States v. Brand*, 80 F.3d 560 (1st Cir. 1996), *Lewis v. Pinchak*, 348 F.3d 355 (3d Cir. 2003), *Beathard v. Johnson*, 177 F.3d 340 (5th Cir. 1999), *Finney v. Rothgerber*, 751 F.2d 858 (6th Cir. 1985), *Hunter v. Clark*, 934 F.2d 856 (7th Cir. 1991), and *United States v. Soto*, 519 F.3d 927 (9th Cir. 2008)); see also *People v. Carreon*, 225 Ill. App. 3d 133, 143 (1992).

Applying the same reasoning to the facts in *Glasper*, our supreme court found that "no rational juror would have acquitted defendant of the offenses for which he was charged" and "[t]he evidence of defendant's guilt is overwhelming." *Glasper*, 234 Ill. 2d at 202. Accordingly, our supreme court concluded that the trial court's error was harmless beyond a reasonable doubt.

Applying our supreme court's analysis in *Glasper* to the instant case, we find that the trial court's failure to comply with Rule 431 does not mandate automatic reversal. We note that there

is no quantitative or qualitative difference between the trial court failing to admonish jurors when requested to do so, as in *Glasper*, and when the trial court fails to admonish jurors under the amended rule, as in the present case. The error alleged herein is simply not included in the limited class of cases that the Supreme Court has recognized as "structural" and thus subject to automatic reversal. See *Glasper*, 234 Ill. 2d at 198. Because the error is not classified as "structural," and the error was not preserved, we apply a plain-error analysis to this case.

Recently, in *People v. Garstecki*, 234 Ill. 2d 430 (2009), our supreme court considered the defendant's argument that the trial court erred in denying his attorney's request to pose supplemental questions directly to the entire venire during *voir dire*. The defendant was convicted of driving under the influence of alcohol (DUI) and argued on appeal that, pursuant to the 1997 amendments to Supreme Court Rule 431, the trial court was required to allow his attorney to participate in *voire dire*. *Garstecki*, 234 Ill. 2d at 432. Our supreme court held that Rule 431 "clearly mandates" that the trial court consider: (1) the length of examination by the court; (2) the complexity of the case; and (3) the nature of the charges; and then determine, based on those factors, whatever direct questioning by the attorneys would be appropriate. *Garstecki*, 234 Ill. 2d at 444.

Our supreme court determined that the trial court complied with the rule where it inquired into the questions that the defendant's attorney wanted to ask and then explained that these were areas that the court was already going to cover in its own questioning. The trial court also asked if the case would involve complex factual or legal issues and the defendant's attorney stated that it would not. Following its own *voir dire*, the trial court then allowed defendant's attorney to pick

out any prospective jurors he wished to question further, allowing defendant's attorney to ask follow-up questions to any jurors whose answers to the trial court's questions indicated a potential for bias. *Garstecki*, 234 Ill. 2d at 444-45. Our supreme court held that the trial court did exactly what Rule 431 mandates where "it considered the appropriate factors and allowed whatever supplemental questioning it deemed appropriate." *Garstecki*, 234 Ill. 2d at 445.

Our supreme court further held, " '[T]he trial court is to exercise its discretion in favor of permitting direct inquiry of jurors by attorneys.' [Citation.] We are not prepared to say, however, that it is impossible to conceive of a case in which the court could determine, based on the nature of the charge, the complexity of the case, and the length of the court's examination, that no attorney questioning would be necessary." *Garstecki*, 234 Ill. 2d at 444 (quoting *People v. Allen*, 313 Ill. App. 3d 842, 847 (2000)). The court then concluded, "Because the trial court complied with the rule's mandatory obligation, we are not presented with the question of whether the rule is mandatory or directory. *** [B]ecause we find no error, we have no occasion to consider whether a violation of Rule 431 can be harmless error." *Garstecki*, 234 Ill. 2d at 445.

Applying our supreme court's analyses to the instant case, we decline to find that the trial court's failure to comply with Rule 431(b) mandates automatic reversal under the second prong of the plain-error doctrine. Our supreme court's recent determinations continue the unbroken line of decisions holding that in applying the plain-error doctrine under either prong to an alleged instructional error, an analysis of the facts and circumstances of each particular case is required. See *Thurow*, 203 Ill. 2d at 363; *Crespo*, 203 Ill. 2d at 348; *Nitz*, 219 Ill. 2d at 415-16; *Herron*, 215 Ill. 2d at 181-83; *Hopp*, 209 Ill. 2d at 10; *Davis*, 233 Ill. 2d at 273; *Glasper*, 234 Ill. 2d at

No. 1-07-2826

200; *Daniels*, 172 Ill. 2d at 165; *Garstecki*, 234 Ill. 2d at 444.

As our supreme court explained in *Durr*:

"We have repeatedly held that 'we can review any question not otherwise properly preserved if we believe that plain error affecting a substantial right *may* have occurred.' (Emphasis added.) *People v. Shaw*, 186 Ill. 2d 301, 326 (1998). We have reviewed alleged instructional errors under the plain-error doctrine, as affecting substantial rights, even though we have ultimately concluded that 'any instructional error was [not] so substantial that it reflected on the fairness of the trial.' *People v. Williams*, 181 Ill. 2d 297, 317-20 (1998). Indeed, 'to determine whether a purported error is "plain" requires a substantive look at it. But if, in the end, the error is found not to rise to the level of a plain error ***, the procedural default must be honored.' *Keene*, 169 Ill. 2d at 17." *Durr*, 215 Ill. 2d at 298.

We note that after our supreme court's decision in *Glasper*, other panels of the First District Appellate Court and the Second District Appellate Court have considered the effect of a trial court's failure to fully comply with the amended Rule 431(b) both in the contexts of plain error and harmless error.[1] In *People v. Graham*, 393 Ill. App. 3d at 274, a different panel of the

---

[1] While this case was pending before this court, the parties cited decisions by different districts of the Appellate Court of Illinois, which predated *Glasper*. Our supreme court recently vacated and directed the appellate court to reconsider its judgment, in light of *Glasper*, in the following cases: *People v. Stump*, 385 Ill. App. 3d 515 (2008) (Fourth District), *appeal denied &*

-31-

No. 1-07-2826

First District Appellate Court held that "a trial judge's failure to comply with Rule 431(b) denies a defendant a substantial right and thus a fair trial and obviates the need to inquire into the harmfulness or the measure of prejudice to the defendant." In *Graham*, the trial judge addressed three out of the four *Zehr* principles. However, the trial judge failed to question and allow the jurors to respond to the second *Zehr* principle, namely, whether they understood and accepted that the State had the burden to prove the defendant guilty beyond a reasonable doubt. *Graham*, 393 Ill. App. 3d at 273. The *Graham* court found that the failure to fully comply with Rule 431(b) required a new trial. *Graham*, 393 Ill. App. 3d at 275. The *Graham* court recognized that our supreme court in *Glasper* applied a harmless-error analysis to the trial court's violation of the prior version of Rule 431(b). However, the *Graham* court determined that harmless error did not apply to the amended Rule 431(b) because our supreme court emphasized in *Glasper* that

its " 'holding is limited to the version of Rule 431(b)(4) that was in effect at the time of the instant trial, and would not necessarily apply to subsequent versions of the rule.' " *Graham*, 393 Ill. App. 3d at 276 (quoting *Glasper*, 234 Ill. 2d at 200). In so holding, the *Graham* court explained that "[u]nlike the version of *** the rule at issue in the present case, the rule's protections are now extended to all defendants, not just those who chose to invoke them." *Graham*, 393 Ill. App. 3d at 276.

---

*judgment vacated,* 233 Ill. 2d 592 (2009); *People v. Anderson*, 389 Ill. App. 3d 1 (2009) (First District), *appeal denied & judgment vacated,* 233 Ill. 2d 565; *People v. Alexander*, 391 Ill. App. 3d 419 (2009) (Third District), *appeal denied & judgment vacated,* 233 Ill. 2d 565 (2009).

Following the *Graham* court's reasoning, a different panel of this court in *People v. Wilmington*, 394 Ill. App. 3d 567, 572 (2009), held, "[w]e do not read *Glasper* to hold that a harmless-error analysis can apply to the 2007 rule." The *Wilmington* court noted that *Glasper* involved the earlier version of Rule 431(b) under which a defendant had to request that the *Zehr* questions be asked of the venire, as opposed to the current version of the rule under which the admonitions are required. *Wilmington*, 394 Ill. App. 3d at 572. In *Wilmington*, the trial court informed the venire members of all four *Zehr* principles, but did not question the potential jurors about their understanding and acceptance of one of the principles, *i.e.*, the defendant's right not to testify. *Wilmington*, 394 Ill. App. 3d at 574. In *Wilmington*, the State argued that the first prong of the plain-error doctrine should not apply where the evidence of the defendant's guilt was "overwhelming." However, the *Wilmington* court declined to consider the first type of plain error and held that the second prong of plain error applied because "[t]he failure to conduct a complete admonition in accordance with Rule 431(b) denied defendant the right to a fair and impartial jury, which is a substantial right, and therefore constituted plain error." *Wilmington*, 394 Ill. App. 3d at 575. Based on its finding of plain error, the *Wilmington* court reversed the defendant's conviction and sentence for first degree murder and concealing that homicide, and remanded for a new trial. *Wilmington*, 394 Ill. App. 3d at 576.

In *People v. Arredondo*, 394 Ill. App. 3d 944 (2009), and *People v. Madrid*, 395 Ill. App. 3d 38 (2009), another panel of this court agreed with the *Wilmington* analysis and held that the circuit court's failure to fully comply with the 2007 amended version of Rule 431(b) constituted plain error necessitating reversal and remandment for a new trial. While the State argued in both

cases that the error was harmless, "as it was not a 'structural error' rendering the criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence," the courts in *Arredondo* and *Madrid* declined to apply a harmless-error analysis. *Arredondo*, 395 Ill. App. 3d at 954-55; *Madrid*, 395 Ill. App. 3d at 47. Rather, the *Arredondo* and *Madrid* courts expressly followed *Wilmington* and held that the circuit court's failure to fully comply with Rule 431(b) constituted the second type of plain error, where defendants were denied a "substantial right" and obviated the need to inquire into any prejudice to defendants. Based on their findings of second-prong plain error, the courts in *Arredondo* and *Madrid* reversed the defendants convictions and remanded for a new trial. *Arredondo*, 394 Ill. App. 3d at 955-56; *Madrid*, 395 Ill. App. 3d at 48.

Finally, in *People v. Blair*, 395 Ill. App. 3d 465 (2009), the Second District Appellate Court determined that the circuit court's failure to fully comply with amended Rule 431(b) required that the defendant's conviction be reversed and remanded the matter for a new trial. The *Blair* court found the error amounted to the second type of plain error where it "denied defendant a substantial right, undermined the fairness of his trial, and impacted the integrity of the judicial process." *Blair*, 395 Ill. App. 3d at 478. The *Blair* court distinguished *Glasper* based on the fact that our supreme court limited its holding in *Glasper* to the 1997 version of Rule 431(b), which, unlike the 2007 version of the rule, did not require the trial court to *sua sponte* ascertain each prospective juror's understanding and acceptance of all four *Zehr* principles in all criminal jury trials. *Blair*, 395 Ill. App. 3d at 479. The *Blair* court also noted that *Glasper* involved the trial court's failure to ask the prospective jurors about just one of the *Zehr* principles; whereas the trial court in *Blair* did not ask any prospective juror about his or her understanding and acceptance of

all four principles enumerated in Rule 431(b). *Blair*, 395 Ill. App. 3d at 479.

These recent cases therefore held that while harmless error applied in *Glasper*, it was inapplicable under the 2007 version of Rule 431(b). The appellate courts in these cases then found the second type of plain error based on the fact that the trial court's failure to fully comply with amended Rule 431(b) denied the defendants a "substantial right." Based on their findings of the second type of plain error, the appellate courts declined to consider the closeness of the evidence or prejudice to the defendants.

As previously discussed in this opinion, Supreme Court Rule 615(a) does provide that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Ill. S. Ct. R. 615(a). As the defendant in the instant case failed to object to the alleged instructional error at trial, Rule 451(c) is applicable rather than Rule 615(a). Rule 451(c) provides, as previously explained, that "substantial defects are not waived by failure to make timely objections thereto if the interests of justice require." Ill. S. Ct. R. 451(c) (eff. July 1, 2006). However, as plain-error analyses under Supreme Court Rules 451(c) and 615(a) are construed identically (*Durr*, 215 Ill. 2d at 296-97), the difference in language between the rules is immaterial.

In *Herron*, our supreme court pointed out that in its previous holding in *Crespo*, the court had "assumed that defendant's substantial rights were affected by the *Apprendi* violation," but held that, because the State presented overwhelming evidence that the murder was brutal and heinous, " 'there [was] no basis for concluding that the *Apprendi* violation "seriously affected the

fairness, integrity or public reputation of judicial proceedings." ' " *Herron*, 215 Ill. 2d at 182-83 (quoting *Crespo*, 203 Ill. 2d at 348).

Thus, as explained in *Herron* and *Crespo*, the fact that an instructional error has affected the "substantial rights" of a defendant is not a sufficient basis in itself for a court of review to reverse a conviction. Similarly, in *Davis*, our supreme court held that "even if we were to find that a constitutional due process error occurred in instructing the jury on felony murder or that the one-good-count presumption is questionable, it would still not require automatic reversal of defendant's murder conviction." *Davis*, 233 Ill. 2d at 273.

We further note that in *Nitz*, our supreme court held that "a sentence based on a judge-made finding that a murder was brutal or heinous-is not a presumptively prejudicial error that must be remedied regardless of its effect on the trial's outcome. In [*Crespo* and *Kaczmarek*], we required the defendants to prove that they were prejudiced by the error. See *Crespo*, 203 Ill. 2d at 348; *Kaczmarek*, 207 Ill. 2d at 302. Thus, the second prong of the *Herron* plain-error analysis is inapplicable to defendant's case." *Nitz*, 219 Ill. 2d at 415-16.

It appears that the *Graham-Wilmington* line of cases hold that whenever an instructional error affects a "substantial right," the error is presumptively prejudicial and is, therefore, subject to automatic reversal. This holding is erroneous. The holdings in *Herron, Crespo, Nitz, Durr*, and *Davis* make it clear that a reviewing court may consider the applicability of the second prong of plain-error analysis and then decide not to reverse a case. In applying a plain-error analysis, our supreme court in *Nitz* held, "To execute either [a harmless error or a plain-error] analysis, a reviewing court must examine the evidence adduced at trial and determine objectively whether a

rational jury would have made the finding in question." *Nitz*, 219 Ill. 2d at 414.

In *Herron*, our supreme court explained:

"We reiterate: the plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence. In the first instance, the defendant must prove 'prejudicial error.' That is, the defendant must show both that there was plain error and that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him. The State, of course, can respond by arguing that the evidence was not closely balanced, but rather strongly weighted against the defendant. In the second instance, the defendant must prove there was plain error and that the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. *Keene*, 169 Ill. 2d at 17. Prejudice to the defendant is presumed because of the importance of the right involved, '*regardless* of the strength of the evidence.' (Emphasis in original.) *Blue*, 189 Ill. 2d at 138. In both instances, the burden of persuasion remains with the defendant. See *Thurow*, 203 Ill. 2d at 363; see also *Hopp*, 209 Ill. 2d at 12 (the plain-error rule requires the defendant to 'show that the error caused a *severe* threat to the fairness' of the trial (emphasis in original.))." *Herron*, 215 Ill. 2d at 186-87.

The holding in *Glasper* also compels us to reject defendant's argument that Rule 431(b)(4)

errors are automatically reversible. "Requiring *per se* reversal for a Rule 431(b)(4) violation \*\*\* would be contrary to principles espoused by this court in other, analogous cases decided after *Zehr*." *Glasper*, 234 Ill. 2d at 197. Also, "[w]e reject the idea that the trial court's failure to conduct Rule 431(b)(4) questioning makes it inevitable that the jury was biased." *Glasper*, 234 Ill. 2d at 201. The court in *Glasper* explained, "It would be inconsistent for this court to hold that a trial court's failure to question a venire regarding a defendant's decision not to testify in violation of Rule 431(b)(4) requires automatic reversal, when we have repeatedly held that automatic reversal is not required when a prosecutor mentions a defendant's post-*Miranda* silence and commits a *Doyle* violation." *Glasper*, 234 Ill. 2d at 198 (citing *People v. Dameron*, 196 Ill. 2d 156, 164-66 (2001)) (listing cases where our supreme court concluded that a *Doyle* violation amounted to harmless error). "Our precedent with respect to *Doyle* violations is significant to our instant analysis when we consider that Rule 431(b)(4) has its roots in the constitutional privilege against self-incrimination." *Glasper*, 234 Ill. 2d at 198 (citing *Zehr*, 103 Ill. 2d at 477).

In their most recent decision addressing Rule 431 error, *People v. Garstecki*, the court held: " '[T]he trial court is to exercise its discretion in favor of permitting direct inquiry of jurors by attorneys.' [Citation.] We are not prepared to say, however, that it is impossible to conceive of a case in which the court could determine, based on the nature of the charge, the complexity of the case, and the length of the court's examination, that no attorney questioning would be necessary." *Garstecki*, 234 Ill. 2d at 444 (quoting *Allen*, 313 Ill. App. 3d at 847). We recognize that the court continued: "because we find no error, we have no occasion to consider whether a violation of Rule 431 can be harmless error" (*Garstecki*, 234 Ill. 2d at 445). We also knowledge

that the court in *Glasper* explained that its holding was "limited to the version of Rule 431(b)(4) that was in effect at the time of the instant trial, and would not necessarily apply to subsequent versions of the rule." *Glasper*, 234 Ill. 2d at 200.

The *Graham-Wilmington* line of cases relies on this language in *Glasper* to require *per se* reversal for Rule 431(b)(4) violations. It is clear to this court that our supreme court, in *Glasper*, used the phrase "would not necessarily apply" to the amended version of Rule 431 to ensure that other courts applying its holding should address the differences in the versions of the rule and how the difference impacted on the facts of the particular case. If our supreme court had wished to simply say that its holding would not apply to the amended rule, it would have said so. Again, we see no quantitative or qualitative difference between a trial court's refusal to ask the required questions under the version of Rule 431 in effect prior to the amendment of 2007 and a trial court's failure to ask the same questions as required by Rule 431 after the amended rule became effective. Under both versions of the rRule, the trial court was required to ask the venire the identical questions. Indeed, in *Glasper* the trial court refused to ask the required questions while in *Graham, Wilmington , Arredondo, Madrid, Blair* and the instant case, the trial court inadvertently failed to ask the required questions, and defense counsel failed to bring this failure to the court's attention.

*Glasper* applied a harmless-error analysis and affirmed the defendant's conviction under the first factual scenario. The *Graham-Wilmington* line of cases applied a plain-error analysis to the failure of the trial court to ask the questions required by Rule 431 and reversed the defendant's convictions. As explained in *Thurow*, "plain-error analysis normally requires the same kind of

inquiry as does harmless-error review," with the "important difference" between the two being that the State has the burden of persuasion in a harmless-error analysis and the defendant has the burden of persuasion in a plain-error analysis (Internal quotation marks omitted.) *Thurow,* 203 Ill. 2d at 363. The holdings in the *Graham-Wilmington* line of cases do not attempt to explain why the defendants in those cases should be rewarded for their failure to ask the trial court to correct its mistake while the defendant in *Glasper,* who did everything a person could do to prevent the court from committing a violation of Rule 431, should lose his argument.

A rule requiring *per se* reversal is particularly inappropriate for violations of Rule 431. The trial court may, as in the instant case, fail to ask one of the *Zehr* questions, or may fail to ask all four, as in *Blair.* The trial court may ask some jurors all of the *Zehr* questions but fail to ask all of the jurors. If the defendant testifies, how is he prejudiced by the trial court's failure to instruct the jury that they should not hold his failure to testify against him? The *Graham-Wilmington* line of cases would appear to require automatic reversal in all of these factual scenarios.

In *Glasper,* our supreme court specifically rejected the State's argument that Rule 431(b)(4) errors are not reversible because they do not constitute "structural" error under federal law. *Glasper,* 234 Ill. 2d at 199-200. Consequently, we reject the State's identical argument before us. The court in *Glasper* further held: "We also make clear that we are not holding that a Rule 431(b)(4) violation could never result in reversible error." *Glasper,* 234 Ill. 2d at 200. The court held that a court of review could qualitatively assess for harm "by applying the rational juror standard to the evidence adduced against defendant. If the evidence is so overwhelming that no

rational jury *** would have acquitted defendant of the offense" for which he was charged, the error cannot be said to have prejudiced the defendant. (Internal quotation marks omitted.) *Glasper*, 234 Ill. 2d at 201. We note that this is an extremely high standard and that as *Glapser* involved a harmless-error analysis, it was the State's burden to meet it.

In *Thompson*, the Illinois Supreme Court ruled that Rule 431(b) mandates a specific question and response process:

> "The trial court must ask each potential juror whether he or she understands and accepts each of the principles in the rule. The questioning may be performed either individually or in a group, but the rule requires an opportunity for a response from each prospective juror on his or her understanding and acceptance of those principles." *Thompson*, 238 Ill. 2d at 607.

Accordingly, the *Thompson* court found error where the trial judge failed to address the third *Zehr* principle and failed to ask jurors whether they not only understood, but also accepted, the presumption of innocence. *Thompson*, 238 Ill. 2d at 607. However, the *Thompson* court held that a violation of Rule 431(b) is not structural error requiring automatic reversal. *Thompson*, 238 Ill. 2d at 611. The court further held that, absent evidence of a biased jury, a violation of Rule 431(b) is not reversible under the second prong of plain-error review. *Thomspon*, 238 Ill. 2d at 615. In addition, the *Thompson* court declined to impose a bright-line rule of reversal for violations of Rule 431(b). *Thompson*, 238 Ill. 2d at 616.

In applying the plain-error doctrine to the facts in this case, the circuit court's failure to

ask each venireperson whether he or she understood and accepted the fourth *Zehr* principle in Rule 431(b)(4) constituted plain error for the purpose of determining whether either prong was satisfied so as to bypass normal forfeiture principles. However, defendant cannot seriously argue that "the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him." *Herron*, 215 Ill. 2d at 186. Consequently, we cannot consider the unpreserved error under the first prong of the plain-error doctrine.

As to the second prong, defendant identifies no evidence that the circuit court's error resulted in his being tried before a biased jury. *Thomspon*, 238 Ill. 2d at 615. Accordingly, we again conclude that defendant has failed to show plain error that would trigger an automatic reversal in this case.

Defendant argues that his trial counsel's opening argument made the failure of the circuit court to ask members of the venire whether they understood and accepted the principle that if defendant did not testify, the jurors could not hold this against him more prejudicial than the failure would have been in the absence of trial counsel's argument. Defendant also uses this argument to support his claim that trial counsel was ineffective in this regard.

We note that in determining whether a defendant was denied the effective assistance of counsel, we apply the familiar two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by our supreme court in *People v. Albanese*, 104 Ill. 2d 504 (1984). To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687. More specifically, the defendant must demonstrate that counsel's

No. 1-07-2826

performance was objectively unreasonable under prevailing professional norms and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The failure to satisfy either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel. *Strickland*, 466 U.S. at 697.

Defendant maintains that defense counsel "promised" the jury that defendant would testify. However, the record does not support this contention. In her opening argument, defense counsel argued that there were no fingerprints or DNA collected at the scene of the victim's garage. Further, defense counsel argued that "no one saw [defendant] enter or leave that garage." Defense counsel continued:

> "The other part of the story that the State isn't aware of is [defendant's] side of the story. He was driving that night around the area, doing what most of us might do, collecting what we might call junk. He was driving down alleys looking for what people place outside of their garage, for others to take, because they don't want it any more. But that night, [defendant] didn't find an old dresser with a drawer hanging off it to fix up. That night he found a lawn mower and a ladder. He threw it in his truck."

During rebuttal argument, the State commented on defense counsel's opening argument. The State argued as follows:

> "Now during opening statement defense counsel said you know that this

-43-

guy here, he was junking in the alley. That's why he got this stuff. He was driving around looking for things. I believe they actually said he found the lawn mower and that he found the ladder and put it in his truck, in the alley. Well, where is the evidence of that. There is absolutely no evidence of that."

Contrary to defendant's assertion, the record does not show that his trial counsel promised that defendant would testify or that the State was allowed to comment on his decision not to testify. The State's rebuttal argument merely responded to defense counsel's alternative explanation that defendant was collecting junk in the alley.

The records also shows that after the State rested its case, the circuit court admonished defendant regarding his right to testify. The circuit court asked defendant whether he understood that the right to testify was a right that only he could waive and defendant indicated that he understood. Defendant also indicated that he considered the advice of his attorney, and made the decision not to testify freely and voluntarily. The trial record therefore reveals that it was defendant who decided not to testify after the State rested its case. Defendant "cannot rightly attribute to counsel any damage caused by the unfulfilled opening statement concerning defendant's expected testimony." *People v. Topps*, 293 Ill. App. 3d 39, 46 (1997) (where the defendant changed his mind and chose not to take the stand after the prosecution rested its case, the defendant could not show that trial counsel was ineffective based on opening statements regarding defendant's anticipated testimony). Accordingly, defendant has failed to establish that trial counsel's performance was deficient with respect to opening arguments. Further, nothing in defense counsel's opening argument had any impact on the applicability of plain-error analysis

No. 1-07-2826

under either prong.

III. CONCLUSION

For the above reasons, we affirm defendant's conviction and sentence.

Affirmed.